**IN THE CIRCUIT COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

FILED

NOV 1 2 2013

CIRCUIT COURT CLERK
BY Adell       D.C.

VICKIE KING,                          )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )   No. CT-00 4892-13
                                      )
AMERICAN GENERAL LIFE AND             )   DN   VIII
ACCIDENT INSURANCE COMPANY,           )
                                      )
    Defendant.                        )

## COMPLAINT

Comes now Plaintiff Vickie King ("King"), through her undersigned counsel, and states

the following civil action against Defendant American General Life and Accident Insurance

Company ("American General"):

1.    American General is an active Tennessee for-profit corporation whose principal

place of business is American General Center, Nashville, Tennessee 37250-0001.

2.    King is an adult resident of Shelby County, Tennessee.

3.    On or about September 16, 2011, American General, in consideration of the

premiums paid by Joenathan Meeks ("Insured") to American General, issued and delivered to the

Insured American General Life Insurance Policy No. 211543870 ("Insurance Policy") by the

terms of which American General agreed to insure Meeks' life for the face amount of One

Hundred Thousand Dollars ($100,000.00). A copy of the Insurance Policy issued and delivered by

American General to Meeks is attached hereto as Exhibit A.

4.     King was the fiancé of Insured and is the sole beneficiary of the Insurance Policy. See Exhibit A, Application for Life Insurance ¶7.

5.     On or about November 12, 2012, while the Insurance Policy was in full force and effect, Meeks died as a consequence of diastolic congestive heart failure and hypertensive heart disease.  A copy of the Tennessee Department of Health Certificate of Death Number 026087 is attached hereto as Exhibit B.

6.     Thereafter, on or about November 15, 2012, King submitted to American General the American General Life Claims Claimant's Statement (which is American General's "Company claim form") wherein she notified American General of the Insured's death and requested that American General pay the insurance proceeds to her by check.  A copy of the Life Claims Claimant's Statement is attached hereto as Exhibit C.

7.     Shortly thereafter King provided American General with a certified death certificate for Insured.

8.     Pursuant to the terms of the Insurance Policy, "[d]ue proof of the Insured's death must include Our Company claim form completed by the Beneficiary and a certified copy of the death certificate of the Insured."   See Exhibit A, p. 4, Payment of Insurance Benefits.

9.     Thereafter, by letter dated February 25, 2013, American General acknowledged King's claim on Insured and informed King that American General had made a request for medical records from Baptist Memorial Hospital East, and that Baptist Memorial Hospital East required authorization from the "oldest son of the insured" in order to release the requested medical records. A copy of American General's February 25, 2013 letter is attached hereto as Exhibit D.

2

10.    King has no control over the "oldest son of the insured" and could not compel the "oldest son of the insured" to do any acts in connection with her rights as the sole beneficiary under the Insurance Policy.

11.    By letter dated June 14, 2013, American General acknowledged that it had all the necessary information from King to review the claim.  A copy of American General's June 14, 2013 letter is attached hereto as Exhibit E.

12.    By letter dated July 18, 2013, American General notified King that her claim had been referred to American General's "management department for review."  A copy of American General's July 18, 2013 letter is attached hereto as Exhibit F.

13.    By letter dated August 8, 2013, American General again acknowledged the claim on Insured and stated:  "We are obtaining medical records and will advise you further after they have been received and reviewed."  A copy of American General's August 8, 2013 letter is attached hereto as Exhibit G.

14.    By letter dated August 9, 2013, American General once again acknowledged the claim on Insured and stated:  "We are reviewing our file and will advise you again soon."  A copy of American General's August 9, 2013 letter is attached hereto as Exhibit H.

15.    American General has failed to pay the proceeds of said Insurance Policy to King as of the date of this Complaint, which is more than one full year after the death of the Insured.

16.    Insured complied at all times with the terms, conditions, and other provisions of the Policy.

17.    King complied at all times with the terms, conditions, and other provisions of the Policy.

3

18.     American General, by unreasonably delaying and failing to pay the proceeds of the Insurance Policy to King, breached the contractual obligations that it assumed in the Policy.

19.     King has no adequate remedy other than that prayed for herein by which the rights of the parties hereto may be determined.

20.     By reason of the delay and failure of American General to pay the proceeds of the Insurance Policy to King, King has incurred substantial legal fees and other costs, and will incur additional substantial legal fees and other costs.

WHEREFORE, PREMISES CONSIDERED, King requests the following relief:

1.     That a judgment be entered declaring that American General is liable to King for One Hundred Thousand Dollars ($100,000.00) which is the face value of the Insurance Policy.

2.     That King also be awarded interest beginning on the fifteenth day following the date of death of Insured, with interest compounded annually, at a rate of interest payable equal to or greater than the interest currently paid by American General with respect to proceeds left on deposit, pursuant to Tennessee Code Annotated Section 56-7-315.

3.     That King also be awarded, in addition to the face value of the policy and interest pursuant to Tennessee Code Annotated Section 56-7-315, twenty-five percent (25%) on the liability for the loss due to American General's failure to pay the loss within sixty (60) days after a demand was made by King, pursuant to Tennessee Code Annotated Section 56-7-105.

4.     That King also be awarded all attorneys' fees, legal fees and other costs incurred by King pursuant to Tennessee Code Annotated Section 56-7-105.

5.     That King also be awarded pre-judgment interest.

4

6.     That all costs be assessed against American General, including all discretionary costs pursuant to Tennessee Rule of Civil Procedure 54.04.

7.     That the Court award all further relief as this Court deems just and equitable.

Respectfully submitted,

By: _____

Ricky E. Wilkins, Esq. (BPR #14526)
Sharon Harless Loy, Esq. (BPR #19824)
The Law Offices of Ricky E. Wilkins
The Shrine Building
66 Monroe Avenue, Suite 103
Memphis, TN 38103-2471
Telephone:   (901) 322-4450
Facsimile:   (901) 322-4451

*Attorneys for Vickie King, Plaintiff*

5





DESK CODE - HQ

Johnathan Meeks - 211543870

# American General Life and Accident Insurance Company

American General Center • Nashville, Tennessee 37250-0001
(A STOCK COMPANY)
1-800-888-2452

This Policy is a legal contract between You, the Owner, and Us, American General Life and Accident Insurance Company. As with any other contract, You should **READ THIS POLICY CAREFULLY.**

**We**, **Us** and **Our** refer to American General Life and Accident Insurance Company. **You** and **Your** refer to the Owner of this Policy.

## POLICY DATA

**Insured** - Johnathan Meeks

**Age** - 53

**Gender** - Male

**Premium Class** - Standard-No Tobacco

**Beneficiary** - See Application

**Policy Number** - 211543870

**Policy Date** - September 16, 2011

**Face Amount** - $100,000

**Initial Premium** - $68.73

**Premium Payment Interval** - One Month

**TWENTY DAYS TO EXAMINE CONTRACT.** If You are not satisfied with this Policy for any reason, You may return the Policy to Us or to Our authorized agent within 20 days after You receive it. If You do so, We will cancel this Policy and refund the premium that was paid.

Signed for American General Life and Accident Insurance Company at Nashville, Tennessee.

SECRETARY

PRESIDENT

EXHIBIT

A

**ADJUSTABLE PREMIUM TERM LIFE INSURANCE POLICY**
**INSURANCE PAYABLE AT DEATH OF INSURED BEFORE THE TERMINATION DATE**
**CONVERTIBLE AND RENEWABLE**
**PREMIUMS PAYABLE FOR PERIOD SHOWN ON THE POLICY SCHEDULE**
**NONPARTICIPATING**

AGLA 09TRM

Page 1

## CONTENTS OF POLICY

| | | | | | |
|---|---|---|---|---|---|
| Policy Data | Page | 1 | General Provisions | Page | 6 |
| Policy Schedule | Page | 3 | Conversion and Renewal Provisions | Page | 7 |
| The Owner and The Beneficiary | Page | 4 | Settlement Options | Page | 10 |
| Payment of Insurance Benefits | Page | 4 | Settlement Option Tables | Page | 11 |
| Paying Premiums | Page | 5 | | | |

Any additional benefit riders and a copy of the application are included after Page 11.

## POLICY PROVISIONS IN ALPHABETICAL ORDER

| | | | | | |
|---|---|---|---|---|---|
| Age and Gender | Page | 6 | New Policy | Page | 7 |
| Assignment | Page | 6 | Nonparticipation | Page | 6 |
| Beneficiary | Page | 4 | Owner | Page | 4 |
| Change of Owner or Beneficiary | Page | 4 | Policy Date | Page | 6 |
| Claims of Creditors | Page | 6 | Policy Settlement | Page | 6 |
| Conversion Credit | Page | 7 | Premium Payment | Page | 5 |
| Conversion Option | Page | 7 | Reinstatement | Page | 5 |
| Correspondence | Page | 6 | Renewal Option | Page | 8 |
| Death Benefit | Page | 4 | Right to Change Premium | Page | 5 |
| Grace Period | Page | 5 | Settlement Options | Page | 10 |
| Incontestability | Page | 6 | Suicide Exclusion | Page | 4 |
| Lapse | Page | 5 | The Contract | Page | 6 |

AGLA 09TRM

DESK CODE - JJQ                                        Jonnathan Meeks - 211543670

# POLICY SCHEDULE

| Benefits and Premiums |

|  | Amount | Termination* Date | Annual** Premium | Premiums* Payable |
|---|---|---|---|---|
| **BASIC POLICY** | | | | |
| Adjustable Premium Term Life Insurance, | $100,000 | 09-16-2031 | $789.00 | 20 Years |
| Convertible and Renewable | | | | |
| *For the Initial Term Period. For future periods, see the "Schedule for Renewal Term Periods". | | | | |
| **For first five years of the Initial Term Period | | | | |

### ADDITIONAL BENEFITS provided by Riders

Accelerated Benefit covering the following Insured Persons:
Insured:

| | Amount | Termination* Date | Annual** Premium | Premiums* Payable |
|---|---|---|---|---|
| Name: Johnathan Meeks Age: 53 Gender: Male | See Rider | 09-16-2031 | $0.00 | 20 Years |
| Premium Class - Standard-No Tobacco | | | | |
| Effective Date of Insured Person's Coverage: September 16, 2011 | | | | |
| Accelerated Coverage Amount: | $100,000 | | | |
| Defined Accelerated Benefit Percentage: | 0% | | | |
| Defined Accelerated Benefit: | $000 | | | |
| Subsequent Defined Accelerated Benefit Factor: | 0.2 | | | |
| Maximum Elected Death Benefit: | $100,000 | | | |
| Maximum Administrative Charge per Qualifying Event: | $250 | | | |
| Rider Conversion Expiry Date: | 09-16-2027 | | | |
| Rider Termination Date for Initial Term Period: | 09-16-2031 | | | |

**Total Annual Premium: $789.00****

A premium of $68.73[1] is due on the Policy Date. Subsequent premiums are payable every month during the premium period. This premium may be subject to increase because of any renewable term riders which may be part of this contract.

[1] Automatic Bank Check Premium Payment Plan.   If this policy is removed from this Plan, the monthly premium will be $70.73. This premium may be subject to increase because of any renewable term riders which may be part of this contract.

AGLA 09TRM                    (Continued on Back)                    Page 2

# POLICY SCHEDULE

### (Continued)

THE ANNUAL PREMIUM SHOWN ABOVE IS GUARANTEED FOR THE FIRST FIVE YEARS OF THE INITIAL TERM PERIOD. PREMIUMS FOR THE REMAINING YEARS IN THE INITIAL TERM PERIOD ARE SHOWN IMMEDIATELY BELOW.

| Insured's Attained Age | Total Current Annual Premium | Total Maximum Annual Premium |
|---|---|---|
| 58 | $789.00 | $2,649.00 |
| 59 | $789.00 | $2,892.00 |
| 60 | $789.00 | $3,195.00 |
| 61 | $789.00 | $3,564.00 |
| 62 | $789.00 | $3,996.00 |
| 63 | $789.00 | $4,461.00 |
| 64 | $789.00 | $4,953.00 |
| 65 | $789.00 | $5,463.00 |
| 66 | $789.00 | $5,979.00 |
| 67 | $789.00 | $6,519.00 |
| 68 | $789.00 | $7,083.00 |
| 69 | $789.00 | $7,722.00 |
| 70 | $789.00 | $8,463.00 |
| 71 | $789.00 | $9,369.00 |
| 72 | $789.00 | $10,428.00 |

### Schedule For Renewal Term Periods
### (for Term Life Insurance Policy)

| Insured's Attained Age | Termination Date | Total Current Annual Premium | Total Maximum Annual Premium | Premiums Payable |
|---|---|---|---|---|
| 73 | 09-16-2032 | $10,313.00 | $11,541.00 | 1 Year |
| 74 | 09-16-2033 | $11,483.00 | $12,738.00 | 1 Year |
| 75 | 09-16-2034 | $12,740.00 | $14,007.00 | 1 Year |
| 76 | 09-16-2035 | $14,134.00 | $15,399.00 | 1 Year |
| 77 | 09-16-2036 | $15,761.00 | $17,016.00 | 1 Year |
| 78 | 09-16-2037 | $17,654.00 | $18,885.00 | 1 Year |
| 79 | 09-16-2038 | $19,790.00 | $20,973.00 | 1 Year |
| 80 | 09-16-2039 | $22,178.00 | $23,283.00 | 1 Year |
| 81 | 09-16-2040 | $24,651.00 | $25,782.00 | 1 Year |
| 82 | 09-16-2041 | $27,265.00 | $28,407.00 | 1 Year |
| 83 | 09-16-2042 | $30,113.00 | $31,254.00 | 1 Year |
| 84 | 09-16-2043 | $37,119.00 | $37,489.00 | 1 Year |
| 85 | 09-16-2044 | $44,525.00 | $44,970.00 | 1 Year |
| 86 | 09-16-2045 | $50,600.00 | $51,106.00 | 1 Year |
| 87 | 09-16-2046 | $57,506.00 | $58,081.00 | 1 Year |
| 88 | 09-16-2047 | $65,356.00 | $66,009.00 | 1 Year |
| 89 | 09-16-2048 | $74,278.00 | $75,020.00 | 1 Year |
| 90 | 09-16-2049 | $84,420.00 | $85,263.00 | 1 Year |
| 91 | 09-16-2050 | $86,949.00 | $87,818.00 | 1 Year |
| 92 | 09-16-2051 | $89,556.00 | $90,451.00 | 1 Year |
| 93 | 09-16-2052 | $92,240.00 | $93,162.00 | 1 Year |
| 94 | 09-16-2053 | $95,006.00 | $95,955.00 | 1 Year |

On the fifth Policy anniversary and any later Policy anniversary, We have the right to change the premium for this Policy. See the "Right to Change Premium" provision on Page 5.

09-16-2053 is the Termination Date of the Last Renewal Term Period referred to in the "Renewal Option" provision on Page 6.

F DESK CODE - TJC

Jonathan Meeks - 211543870

# POLICY SCHEDULE

### (Continued)

| Conversion Schedule |

**Conversion Expiry Date:** 09-16-2027
See "Conversion Option" provision on Page 7.

**Minimum Face Amount:** $100,000

**Conversion Credit Expiry Date:** 09-16-2016
See "Conversion Credit" provision on Page 7.

| Endorsement(s) |

This policy is issued in a Premium Class based on the statement in the application that the Insured did not use tobacco or any form of nicotine within the 5 year period immediately prior to the date of the application.

If the Insured dies within two (2) years of the date of the application and the statement concerning tobacco and/or nicotine usage was incorrect, any amount payable under this policy will be the amount that the premium paid would have purchased in the correct Premium Class.

A-9.2C

Jonathan Meeks - 211543870

# THE OWNER AND THE BENEFICIARY

## OWNER

The Insured is the Owner of this Policy unless otherwise stated in the application, or later changed. A minor Insured who is not the Owner will automatically become the Owner on his or her 18th birthday or on the death of the Owner, whichever occurs earlier. You may have this Policy endorsed so that this change of ownership will occur at a different time. You must request this endorsement before the Insured's 18th birthday.

As Owner, You may exercise all rights in this Policy while the Insured is living. If You are without legal capacity, We will allow Your rights to be exercised by:

(a) Your legally appointed Guardian; or
(b) a person who We determine is responsible for Your welfare and support.

To exercise Your rights, You should follow the procedures stated in this Policy. All elections, designations, changes and requests must be made in writing and in a form acceptable to Us.

If You want to request a payment, change a Beneficiary, change an address or request any other action by Us, You should do so on the forms prepared for each purpose. You may request these forms, and advice on any questions You might have, from one of Our authorized representatives or directly from Our Home Office. Home Office means Our main office located at the American General Center in Nashville, Tennessee 37250-0001, or such other location that We may elect.

## BENEFICIARY

The Beneficiaries for this Policy are as stated in the application, unless later changed. Each Beneficiary is classified as a First or Second Beneficiary. All surviving Beneficiaries of the same class will share equally in any payments to that class, unless otherwise stated.

We will pay the Death Benefit under this Policy to any First Beneficiaries surviving the Insured. If no First Beneficiaries survive the Insured, We will pay any Second Beneficiaries surviving the Insured. If no stated Beneficiary is living when the Insured dies, We will pay:

(a) the executor or administrator of the Insured's estate; or
(b) the spouse, child or parent of the Insured whom We determine is entitled to payment.

If any Beneficiary is without legal capacity, We can pay his or her share of the Death Benefit to any person whom We determine is responsible for his or her welfare and support. Such payment will discharge Our liability for that payment.

## CHANGE OF OWNER OR BENEFICIARY

While the Insured is living, You may change:

(a) the Owner; or
(b) a Beneficiary designation that is not restricted by a previous designation.

We can require that any change be endorsed on Your Policy. Any change will be effective as of the date the change request was signed, except that it will not apply to any payment We make or any action We take before We record the request in Our Home Office.

# PAYMENT OF INSURANCE BENEFITS

If the Insured dies before this Policy's Termination Date shown on the Policy Schedule and while this Policy is in force, We will pay the Death Benefit to the Beneficiary after We receive due proof of the Insured's death and a proper written claim. Due proof of the Insured's death must include Our Company claim form completed by the Beneficiary and a certified copy of the death certificate of the Insured. We may require any additional information or documentation that We deem necessary to establish the fact of the Insured's death and the manner thereof.

You and/or any other person claiming benefits under this Policy shall cooperate with Us in Our investigation of a claim under this Policy by providing assistance including, but not limited to, the completion and submission to Us of any questionnaire or authorization form needed, in Our opinion, to conduct such investigation.

## DEATH BENEFIT

The Death Benefit is the Face Amount with certain additions and deductions.

We add:

(a) any insurance on the Insured's life that is payable under any attached riders; and
(b) any part of a premium paid for coverage beyond the Policy month in which the Insured dies.

We deduct any unpaid premium (but not more than one month's part of the premium) if the Insured dies within the Grace Period.

## SUICIDE EXCLUSION

We will not pay the Death Benefit if the Insured dies by suicide, while sane or insane, within two years from the date of application. We will return all premiums paid and this Policy will terminate.

AGLA 09TRM

# PAYING PREMIUMS

## PREMIUM PAYMENT

The Initial Premium for the Premium Payment Interval selected for this Policy is shown in the Policy Data on Page 1. The Annual Premiums for the Initial Term Period and for each available Renewal Term Period are shown on the Policy Schedule.

The Initial Premium is due on the Policy Date. Subsequent premiums for the Initial Term Period and for each Renewal Term Period are due on the first day of each Premium Payment Interval.

Each premium must be paid on or before its due date. You may pay the premiums at Our Home Office, at any office We designate, or to Our authorized representative. We will give a receipt for each premium paid if You request one. This receipt will be signed by Our President or Secretary and countersigned by the person authorized to accept Your premium.

You may change the Premium Payment Interval for this Policy, subject to Our rules at the time of change.

Premiums payable other than annually are equal to a percentage of the Annual Premium and include additional premium charges.

## RIGHT TO CHANGE PREMIUM

We reserve the right to change the premium for this Policy on the Policy anniversary specified on the Policy Schedule and on any later Policy anniversary, subject to the following terms:

    (a)   The Annual Premium will not exceed the applicable Maximum Annual Premium shown on the Policy Schedule.

    (b)   Any change in premium will apply to all Insureds with the same Policy benefits and provisions and with the same Policy Date, Age at issue, Gender and Premium Class. We will not change the premium because of a change in an Insured's health, occupation or avocation.

    (c)   Any change in premium will take effect only after 30 days prior notice has been given to the Owner of this Policy.

    (d)   Any change in premium will be based on changes in Our expectations of future investment earnings, mortality, persistency, administrative and maintenance expenses, premium taxes, corporate income taxes or interest rates. We will not recoup prior losses, if any, nor distribute prior gains, by changing the premium.

    (e)   Any change in premium will be determined in accordance with procedures and standards on file with the Insurance Department in the state in which this Policy is issued.

This provision does not apply to any rider attached to this Policy.

## GRACE PERIOD

If a premium, other than the Initial Premium, has not been paid on its due date, Your Policy will remain in force for a Grace Period of 31 days.

## LAPSE

If any premium is not paid before the end of its Grace Period, this Policy will lapse. The date of lapse is the date on which the unpaid premium was due. Lapse will terminate this Policy unless it is later reinstated.

## REINSTATEMENT

We will reinstate this Policy at any time within five years from the date of lapse. To reinstate this Policy You must:

    (a)   present evidence of insurability satisfactory to Us; and

    (b)   pay any unpaid premiums with interest at 6% per year from their respective due dates.

AGLA 09TRM

Jonnathan Meeks - 211543870

# GENERAL PROVISIONS

## THE CONTRACT

The entire contract consists of this Policy, all attached riders and endorsements, the attached copy of the original application, and any attached amendments or supplemental applications. This contract is made in consideration of Your application and the payment of premiums as provided. We have relied on all statements in the application as being complete and true to the best of the knowledge and belief of the person(s) signing the application. In the absence of fraud, these statements are representations and not warranties. We will not use a statement to contest a claim or the validity of this Policy unless it is contained in the application.

No change in this Policy is valid unless it is in writing and signed by one of Our officers. No agent or other field representative has authority to change or waive any Policy provision or extend the time for paying a premium.

## AGE AND GENDER

The Insured's Age and Gender on the Policy Date are shown in the Policy Data on Page 1. If the Age or Gender of the Insured is incorrectly stated, any amount payable under this Policy will be the amount that the premium paid would have purchased at the correct Age and Gender. Age means age on the Insured's last birthday. Attained Age means the Insured's Age shown in the Policy Data on Page 1 plus the number of years and completed months from the Policy Date.

## POLICY DATE

The Policy Date is shown in the Policy Data on Page 1. It is used to determine premium due dates, Policy years and Policy anniversaries.

## INCONTESTABILITY

Except for nonpayment of premiums, We will not contest this Policy after it has been in force during the lifetime of the Insured for two years from the date of application. This provision will not apply to any benefits for disability or accidental death.

## ASSIGNMENT

You may assign this Policy. Your rights and those of any other person referred to in this Policy will be subject to the assignment. We are not bound by an assignment unless it is in writing and We have recorded it at Our Home Office. We will not be responsible for the validity of any assignment.

## CORRESPONDENCE

Any request, notice or proof shall be filed with Our Home Office.

## POLICY SETTLEMENT

In any settlement, We may require the return of this Policy.

## CLAIMS OF CREDITORS

All payments under this Policy are exempt from the claims of creditors to the extent permitted by law. Payments may not be assigned or withdrawn without Our consent before becoming payable.

## NONPARTICIPATION

This Policy is nonparticipating. Its premiums do not include a charge for participation in surplus.

# CONVERSION AND RENEWAL PROVISIONS

## CONVERSION OPTION

We agree to convert all or part of this Policy to a New Policy on the life of the Insured. We will not require evidence of insurability.

You must submit a written application and pay the first premium for the New Policy:
   (a) while the Insured is alive;
   (b) while this Policy is in force; and
   (c) before the Conversion Expiry Date for this Policy shown on the Policy Schedule.

You must submit this Policy for cancellation. If You convert less than the Face Amount of this Policy, You may continue the unconverted Face Amount under this Policy if it is at least as much as the Minimum Face Amount shown on the Policy Schedule. The premiums for this Policy thereafter will be the same as the premiums that would be payable if it had been originally issued for the unconverted Face Amount.

## NEW POLICY

You may select the plan and amount of insurance for the New Policy. The plan must be:
   (a) a permanent individual life plan;
   (b) a plan that is then regularly issued at the Insured's Attained Age, Premium Class of the New Policy and for the amount of insurance selected; and
   (c) issued by Us or by one of Our affiliated companies and made available to Our Policyowners for conversion purposes.

You may elect from all policies available for conversion purposes, whether issued by Us or by one of Our affiliated companies, the Policy to which You wish to convert.

The amount of insurance cannot be more than the Face Amount of this Policy or less than the minimum face amount for the plan selected.

The premium for the New Policy will be determined by Our published rates, or by the published rates of Our affiliated company if You convert to such a company's available plan, for the Insured's Attained Age and the Premium Class of the New Policy.

The Premium Class of the New Policy will be the same as the Premium Class of this Policy. If the plan and amount selected are not available in that Premium Class at the Insured's Attained Age, the Premium Class will be the Premium Class which We, or Our affiliated company if applicable, determine to be the most nearly comparable.

The New Policy will not include any ADDITIONAL BENEFITS provided by riders unless agreed to by Us or Our affiliated company if applicable.

## CONVERSION CREDIT

If a New Policy is issued, We, or Our affiliated company as applicable, will provide a Conversion Credit as described below.

If the New Policy is issued for at least the Face Amount of this Policy, the Conversion Credit will be the annual premium paid for this Policy, excluding the premiums for any attached riders. However, if such conversion occurs before the first Policy anniversary, the Conversion Credit will be the annual premium multiplied by the number of months for which premiums have been paid and divided by 12.

If the New Policy is less than the Face Amount of this Policy, the Conversion Credit will be the annual premium for this Policy, excluding the premiums for any attached riders, multiplied by the ratio of the Face Amount of the New Policy to the Face Amount or Specified Amount, as the case may be, of this Policy.

If You convert this Policy before the Conversion Expiry Date shown on the Policy Schedule and select a New Policy, other than a flexible premium adjustable life insurance Policy, issued by Us or by one of Our affiliated companies, We or such affiliated company will reduce the first annual premium for the New Policy. If premiums are payable other than annually, We or such affiliated company will distribute the reduction equally over the premiums payable for the first Policy year.



Jonathan Meeks - 211543870

## CONVERSION AND RENEWAL PROVISIONS
### (Continued)

If You convert this Policy before the Conversion Credit Expiry date and select as Your New Policy a flexible premium adjustable life insurance Policy issued by Us or by one of Our affiliated companies and made available for conversion purposes, We or such affiliated company will pay a Conversion Credit into the accumulation value of the New Policy. On the New Policy's first monthly deduction day, only one-twelfth (1/12) of the Conversion Credit will be included in the New Policy's cash value for all purposes and the remaining eleven-twelfths (11/12) of the Conversion Credit will not be deemed a part of the Policy's cash value. An additional one-twelfth (1/12) of the Conversion Credit in the Policy's accumulation value will be deemed a part of the Policy's cash value on each subsequent monthly deduction day while the New Policy remains in force until the entire Conversion Credit has been accounted for in the New Policy's cash value for all purposes.

**RENEWAL OPTION**
If this Policy is in force on the Termination Date for the Initial Term Period, You may renew it for a Renewal Term Period of one year. If this Policy is in force on the Termination Date for each subsequent Renewal Term Periods of one year until the Termination Date of the Last Renewal Term Period shown on the Policy Schedule. Any renewal of this Policy will be effective as of the renewal date if the first renewal premium is paid on such date or within a Grace Period of 31 days thereafter.

The amount of the premium payable during each Renewal Term Period is shown on the Policy Schedule.

We will automatically renew this Policy on any renewal date if premiums for this Policy are being waived for Total Disability. We will continue to waive premiums during the Renewal Term Period, subject to the terms of the Waiver of Premium Rider.

(This Page Left Blank Intentionally)

F DESK CODE • HQ                    Jonnatnan Meeks • 211543670

# SETTLEMENT OPTIONS

Any amount payable under this Policy may be applied under one or more of the following Settlement Options. The payee under any Settlement Option will be the person who would have received the amount applied if a Settlement Option had not been elected.

## OPTION ONE - PAYMENTS OF INTEREST ONLY
Periodic payments will be made of the interest credited on the amount applied.

## OPTION TWO - PAYMENTS OF A CHOSEN AMOUNT
Periodic payments for the amount chosen will be made until the amount applied, together with interest credited, is paid.

## OPTION THREE - PAYMENTS FOR A CHOSEN PERIOD
Periodic payments will be made so that the amount applied, together with interest credited, will be paid over the period chosen. The period must be at least 5 years and not more than 30 years.

## OPTION FOUR - PAYMENT FOR LIFE WITH A GUARANTEED PERIOD
The amount applied will be used to provide a life annuity with a guaranteed payment period. The amount of the annuity payments per $1,000 of the amount applied is shown in the Option Four Table on Page 11. The guaranteed payment period must be 10 or 20 years. The payee must submit proof of age satisfactory to Us.

## OPTION FIVE - OTHER PLANS OF PAYMENTS FOR LIFE
The amount applied will be used to provide a life annuity of any kind We issue on the date this option is elected. The amount of the annuity payments will be based on the same mortality and interest rates We then use to determine Our published rates for a single premium annuity of like kind. The payee must submit proof of age satisfactory to Us.

## PERIODIC PAYMENTS
Monthly, quarterly, semiannual or annual periodic payments may be selected. However, each periodic payment must be at least equal to the minimum required under Our current rules at the time payments are made.

## INTEREST
We guarantee interest under Settlement Options One, Two, Three and Four at the rate of 2% per year. At Our

sole discretion, We can pay or credit interest at a higher rate for such times and in such manner as We may determine.

## ELECTION OF OPTIONS
Settlement Options may be elected or changed:
   (a)  by You, while the Insured is living; or
   (b)  by the Beneficiary when the Insured dies and before any payments have been made.

Settlement Options Four and Five cannot be changed after the first payment is made.

You may request that the Policy be endorsed to prevent the Beneficiary from changing a Settlement Option You have elected. You must request this endorsement while the Insured is living.

We can require that any election, or later change of election, be endorsed on the Policy. Any election will be effective as of the date the election was signed, except that it will not apply to any payment We may make or any action We take before We record the election in Our Home Office.

## LIMITATIONS
We have the right to pay any amount payable under this Policy in a lump sum, rather than under a Settlement Option, if the payee is:
   (a)  an assignee;
   (b)  a fiduciary; or
   (c)  not a natural person (such as a corporation).

All Settlement Options will be subject to Our rules at the time payments under the Option begin. These include withdrawal rights, designation of payees and evidence of age and survival.

Settlement Options cannot be assigned. To the extent permitted by law, they will be exempt from the claims of creditors.

## DEATH OF PAYEE
If the payee dies and We have not agreed to other arrangements, We will pay to the payee's estate:
   (a)  any unpaid amount applied and accrued interest under Option One;
   (b)  the discounted value of any remaining payments under Options Two and Three; or
   (c)  the discounted value of any remaining guaranteed payments under Options Four and Five.

The discounted values for Options Two, Three, Four or Five will be calculated using the interest rate that was used to determine the amount of the annuity payments selected.

AGLA 09TRMS

# SETTLEMENT OPTION TABLES

## OPTION THREE - PAYMENTS FOR A CHOSEN PERIOD
### Monthly Payments for each $1,000 of Amount Applied

| No. of Years Payable | Monthly Payment | No. of Years Payable | Monthly Payment | No. of Years Payable | Monthly Payment | No. of Years Payable | Monthly Payment | No. of Years Payable | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|
| 5 | $17.49 | 10 | $9.18 | 15 | $6.42 | 20 | $5.04 | 25 | $4.22 |
| 6 | 14.72 | 11 | 8.42 | 16 | 6.07 | 21 | 4.85 | 26 | 4.10 |
| 7 | 12.74 | 12 | 7.80 | 17 | 5.77 | 22 | 4.67 | 27 | 3.98 |
| 8 | 11.25 | 13 | 7.26 | 18 | 5.50 | 23 | 4.51 | 28 | 3.87 |
| 9 | 10.10 | 14 | 6.81 | 19 | 5.26 | 24 | 4.36 | 29 | 3.77 |
|  |  |  |  |  |  |  |  | 30 | 3.68 |

PAYMENTS OTHER THAN MONTHLY - To determine the annual, semiannual, or quarterly payment equivalent to any given monthly payment shown above for Option Three, multiply the monthly payment by 11.84, 5.96, or 2.99, respectively.

## OPTION FOUR - PAYMENTS FOR LIFE WITH A GUARANTEED PERIOD
### Monthly Payment for each $1,000 of Amount Applied

| Age | Male Guaranteed 10 Years | Male Guaranteed 20 Years | Female Guaranteed 10 Years | Female Guaranteed 20 Years | Age | Male Guaranteed 10 Years | Male Guaranteed 20 Years | Female Guaranteed 10 Years | Female Guaranteed 20 Years |
|---|---|---|---|---|---|---|---|---|---|
| 10 * | $2.20 | $2.20 | $2.13 | $2.13 | 46 | $3.24 | $3.19 | $3.01 | $2.98 |
| 11 | 2.22 | 2.21 | 2.15 | 2.14 | 47 | 3.30 | 3.24 | 3.05 | 3.03 |
| 12 | 2.23 | 2.23 | 2.16 | 2.16 | 48 | 3.35 | 3.29 | 3.10 | 3.07 |
| 13 | 2.25 | 2.24 | 2.17 | 2.17 | 49 | 3.42 | 3.34 | 3.16 | 3.12 |
| 14 | 2.26 | 2.26 | 2.19 | 2.18 | 50 | 3.48 | 3.40 | 3.21 | 3.17 |
| 15 | 2.28 | 2.28 | 2.20 | 2.20 | 51 | 3.55 | 3.45 | 3.27 | 3.22 |
| 16 | 2.30 | 2.29 | 2.21 | 2.21 | 52 | 3.62 | 3.51 | 3.33 | 3.28 |
| 17 | 2.31 | 2.31 | 2.23 | 2.23 | 53 | 3.69 | 3.57 | 3.39 | 3.33 |
| 18 | 2.33 | 2.33 | 2.24 | 2.24 | 54 | 3.77 | 3.63 | 3.45 | 3.39 |
| 19 | 2.35 | 2.34 | 2.26 | 2.26 | 55 | 3.85 | 3.70 | 3.52 | 3.45 |
| 20 | 2.37 | 2.36 | 2.28 | 2.27 | 56 | 3.93 | 3.76 | 3.59 | 3.51 |
| 21 | 2.39 | 2.38 | 2.29 | 2.29 | 57 | 4.03 | 3.83 | 3.67 | 3.57 |
| 22 | 2.41 | 2.40 | 2.31 | 2.31 | 58 | 4.12 | 3.90 | 3.75 | 3.64 |
| 23 | 2.43 | 2.42 | 2.33 | 2.33 | 59 | 4.22 | 3.96 | 3.84 | 3.71 |
| 24 | 2.45 | 2.44 | 2.35 | 2.34 | 60 | 4.32 | 4.03 | 3.93 | 3.78 |
| 25 | 2.47 | 2.47 | 2.37 | 2.36 | 61 | 4.44 | 4.10 | 4.02 | 3.85 |
| 26 | 2.50 | 2.49 | 2.39 | 2.38 | 62 | 4.55 | 4.17 | 4.12 | 3.92 |
| 27 | 2.52 | 2.51 | 2.41 | 2.40 | 63 | 4.67 | 4.24 | 4.22 | 4.00 |
| 28 | 2.55 | 2.54 | 2.43 | 2.43 | 64 | 4.80 | 4.31 | 4.34 | 4.07 |
| 29 | 2.57 | 2.56 | 2.45 | 2.45 | 65 | 4.94 | 4.37 | 4.45 | 4.15 |
| 30 | 2.60 | 2.59 | 2.47 | 2.47 | 66 | 5.08 | 4.44 | 4.58 | 4.23 |
| 31 | 2.63 | 2.62 | 2.50 | 2.49 | 67 | 5.22 | 4.50 | 4.71 | 4.30 |
| 32 | 2.66 | 2.65 | 2.52 | 2.52 | 68 | 5.37 | 4.56 | 4.85 | 4.37 |
| 33 | 2.69 | 2.68 | 2.55 | 2.54 | 69 | 5.53 | 4.62 | 4.99 | 4.45 |
| 34 | 2.72 | 2.71 | 2.58 | 2.57 | 70 | 5.69 | 4.67 | 5.15 | 4.52 |
| 35 | 2.75 | 2.74 | 2.60 | 2.60 | 71 | 5.85 | 4.72 | 5.31 | 4.58 |
| 36 | 2.79 | 2.77 | 2.63 | 2.63 | 72 | 6.02 | 4.77 | 5.48 | 4.64 |
| 37 | 2.83 | 2.81 | 2.66 | 2.66 | 73 | 6.20 | 4.81 | 5.65 | 4.70 |
| 38 | 2.87 | 2.85 | 2.70 | 2.69 | 74 | 6.37 | 4.85 | 5.84 | 4.75 |
| 39 | 2.91 | 2.88 | 2.73 | 2.72 | 75 | 6.55 | 4.88 | 6.03 | 4.80 |
| 40 | 2.95 | 2.92 | 2.76 | 2.75 | 76 | 6.73 | 4.91 | 6.22 | 4.84 |
| 41 | 2.99 | 2.96 | 2.80 | 2.79 | 77 | 6.91 | 4.93 | 6.42 | 4.88 |
| 42 | 3.04 | 3.00 | 2.84 | 2.82 | 78 | 7.09 | 4.96 | 6.63 | 4.91 |
| 43 | 3.08 | 3.05 | 2.88 | 2.86 | 79 | 7.27 | 4.98 | 6.83 | 4.94 |
| 44 | 3.13 | 3.09 | 2.92 | 2.90 | 80 + | 7.44 | 4.99 | 7.03 | 4.96 |
| 45 | 3.19 | 3.14 | 2.96 | 2.94 |  |  |  |  |  |

PAYMENTS OTHER THAN MONTHLY - To determine the annual, semiannual or quarterly payment equivalent to any given monthly payment shown above for Option Four, multiply the monthly payment by 11.68, 5.98 or 2.99, respectively.

*and under

+monthly payments for ages above 80 will be furnished upon request

I DESK CODE - IJQ  Jonnathan Meeks - 211543870

Please read this Limited Benefit Rider carefully.

Benefits paid under this Rider may be taxable. If so, You may incur a tax obligation. You should consult Your personal tax advisor to assess the impact of this Benefit.

Benefits as specified under the Policy, including the Policy Amount, cash value, loan value, premiums and cost of insurance are reduced upon payment of an Accelerated Benefit.

## ACCELERATED DEATH BENEFIT RIDER

PROVIDES FOR ACCELERATION OF A PORTION OF THE POLICY AMOUNT

(Please see Page 2 for Index)

### DEFINITIONS

Capitalized terms not defined in this Rider will have the meaning given in the Policy.

**Accelerated Benefit Payment Date** means the date a Defined Accelerated Benefit Amount, if any, or a Flexible Accelerated Benefit Amount will be paid. This date will be no later than 31 days following the satisfaction of all applicable provisions and requirements under this Rider and the Policy to which it is attached.

**Accelerated Coverage Amount**, as shown in the Policy Schedule, means that portion of the Face Amount or Specified Amount, as the case may be, or the amount of any Covered Rider available as one or more Defined Accelerated Benefits or a Flexible Accelerated Benefit as provided by this Rider.

**Activities Of Daily Living** means the following self-care functions:

(a) Bathing: Washing in either a tub or shower, including the task of getting into or out of the tub or shower without the assistance of another person.

(b) Continence: The ability to maintain control of bowel and bladder functions; or, when unable to maintain control of bowel or bladder functions, the ability to perform the associated personal hygiene (including caring for catheter or colostomy bag) without the assistance of another person.

(c) Dressing: Putting on or taking off all items of clothing and any necessary braces, fasteners or artificial limbs without the assistance of another person.

(d) Eating: Feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table), or by feeding tube, or intravenously without the assistance of another person.

(e) Toileting: Getting on and off the toilet and performing associated personal hygiene without the assistance of another person.

(f) Transferring: Moving onto or out of a bed, chair, or wheelchair without the assistance of another person.

**Certified/Certification** means a written definitive determination of an Insured Person's Qualifying Chronic Illness signed by a Licensed Health Care Practitioner, or of an Insured Person's Qualifying Critical Illness or Qualifying Terminal Illness signed by a Physician, based upon the use of evaluations, clinical and/or laboratory investigations, tests and observations that follow recommended and accepted medical or social work practices, as applicable. The results of the Certification must be documented in and supported by the Insured Person's medical or social work records, as applicable, and provided to Us.

**Coma** means a profound state of unconsciousness from which the Insured Person cannot be aroused to consciousness, and in which stimulation will produce no more than primitive avoidance reflexes, which lasts for a period of at least 96 hours.

The Diagnosis of Coma must be documented by evidence of a neurological deficit that is expected to last for a continuous 12-month period or longer from the date of the Diagnosis to determine Coma.

ICC10 ACLA ABB (Continued on Back)

## CONTENTS OF RIDER

Adjustments Due To Certain
   Transactions . . . . . . . . . . . . . . . . Page   8
Conversion . . . . . . . . . . . . . . . . . . . Page  10
Definitions . . . . . . . . . . . . . . . . . . . Page   2
Elected Death Benefit Limitations . . Page   7
Filing An Accelerated Benefit Claim . . Page   9
General . . . . . . . . . . . . . . . . . . . . . . Page  12
Incontestability . . . . . . . . . . . . . . . Page  11
Misstatement Of Age, Gender Or
   Non-Use Of Tobacco
   And/Or Nicotine . . . . . . . . . . . . Page  11

Notice . . . . . . . . . . . . . . . . . . . . . . Page  10
Payment Of An Accelerated Benefit . Page   9
Payment Upon Acceleration Due
   To Qualifying Event . . . . . . . . . . Page   7
Policy Adjustments On An Accelerated
   Benefit Payment Date . . . . . . . . Page   8
Premiums Or Cost Of Insurance . . . . Page  10
Reinstatement . . . . . . . . . . . . . . . . Page  11
Termination . . . . . . . . . . . . . . . . . . Page  12
Waiver Of Rider's Monthly Deduction
   Benefit . . . . . . . . . . . . . . . . . . . . Page  11

(Continued on the Next Page)

**Coronary Artery Bypass** means the use of a non-coronary blood vessel or blood vessels (either artery or vein) to surgically bypass obstructions in a native coronary artery or arteries.

The Diagnosis of the need for a Coronary Artery Bypass must be made by a Physician certified to practice cardiology based on angiographic evidence of the underlying disease.

An illness that does not require surgery but requires a medical procedure such as balloon angioplasty (with or without stent(s)), thrombolytic therapy, laser relief of an obstruction, and/or other intra-arterial procedures is NOT covered.

**Coverage Segment** means the portion of the Face Amount or Specified Amount, as the case may be, of the Policy or of any covered rider represented by an Accelerated Coverage Amount shown in the Policy Schedule.

**Covered Rider** means any benefit rider identified on the Policy Schedule as eligible for acceleration under an Accelerated Benefit Rider.

**Defined Accelerated Benefit,** as shown in the Policy Schedule, means the Accelerated Coverage Amount as to each Coverage Segment multiplied by the applicable Defined Accelerated Benefit Percentage.

**Defined Accelerated Benefit Amount** means the dollar amount, if any, of the Defined Accelerated Benefit for a Coverage Segment that, during the Insured Person's lifetime, is paid by Us due to a Qualifying Event.

**Diagnosed/Diagnosis** means a written definitive Diagnosis of an Insured Person's Critical Illness or Terminal Illness signed by a Physician:
(a) based upon the use of diagnostic evaluations, clinical and/or laboratory investigations, tests and observations that follow recommended and accepted medical practices, the results of which must be documented in and supported by the Insured Person's medical records and provided to Us; and
(b) if applicable, meeting any diagnostic requirements for the Critical Illness being Diagnosed.

**Effective Date** of the Insured Person's coverage is shown on the Policy Schedule.

**Elected Death Benefit** means the portion of the Maximum Elected Death Benefit as to a Coverage Segment that the Owner elects to accelerate as a Flexible Accelerated Benefit due to a Qualifying Event.

**End Stage Renal Failure** means the irreversible and total failure of both kidneys, which requires the undergoing of regular renal dialysis.

The Diagnosis of End Stage Renal Failure must be made by a Physician and be based on the irreversible failure of the function of both kidneys and requiring regular dialysis.

**Flexible Accelerated Benefit** means the portion of the Elected Death Benefit as to a Coverage Segment, minus an actuarial discount determined by Us, that, after Your election of an Elected Death Benefit and subject to Your acceptance or refusal, may be paid by Us due to a Qualifying Event.

We will determine the actuarial discount applicable to the Elected Death Benefit using factors including, but not limited to, the following:
(a) the Accumulation Value, Cash Surrender Value and Cash Value, if any, under the Policy; and
(b) the future premiums or charges payable under the Policy; and
(c) Our assessment of the expected future mortality of the Insured Person; and
(d) an interest rate that will not exceed the greater of the yield on 90-day U.S. Treasury Bills or the statutory adjustable Policy loan interest rate on the Accelerated Benefit Payment Date. If the index used in determining the Elected Death Benefit is discontinued, We will use an appropriate substitute index, subject to the approval of the Insurance Interstate Product Regulation Commission.

**Flexible Accelerated Benefit Amount** means the Flexible Accelerated Benefit determined by Us, that, after Your election of an Elected Death Benefit as to a Coverage Segment, is accepted by You and paid by Us due to a Qualifying Event.

**Hands-on Assistance** means the physical assistance of another person without which the Chronically Ill Insured Person would be unable to perform any one of the Activities Of Daily Living.

**Hemiplegia** means the complete and irreversible Paralysis of the upper and lower Limbs of the same side of the body.

**Immediate Family Member** means a person who is related to the Insured Person or Owner in any of the following ways: spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, parent (includes stepparent), grandparent, brother or sister (includes stepbrother or stepsister), child (includes legally-adopted child or stepchild), or grandchild.

**Insured Person** means the person named as the Insured in the Policy and/or Additional Insured(s) under a Covered Rider.

**In Situ Cancer** means the non-invasive cancer that is confined to the site of origin and does not invade below the most superficial level or is described as "In Situ" in a pathology report.

**Invasive Cancer** means the presence of one or more malignant tumors characterized by the uncontrolled growth and spread of malignant cells and the invasion of normal tissue and major forms of blood cancer: lymphoma, leukemia, multiple myeloma and myelodysplastic syndromes. Invasive Cancer does NOT include the following:
- (a) Leukoplakia;
- (b) Hyperplasia;
- (c) Carcinoid;
- (d) Polycythemia;
- (e) Stage 1 Hodgkin's disease;
- (f) Stage A prostate cancer (less than a $T1cN_0M_0$);
- (g) Duke's stage A colon cancer ($T_2N_0M_0$ or less);
- (h) Intraductal non-invasive breast cancer;
- (i) Stage 0 or 1 transitional cell carcinoma of urinary bladder ($T_1N_0M_0$ or less);
- (j) In Situ Cancer;
- (k) Any skin cancer other than malignant melanoma with a depth of 1mm or deeper or greater than Clark level 2;
- (l) $T_1N_0M_0$ (TNM Classification System) papillary carcinoma of the thyroid less than 1 cm in diameter;
- (m) Any other pre-malignant lesions, benign tumors or polyps.

Invasive Cancer must be Diagnosed by a Physician certified to practice pathological anatomy or osteopathic pathology and must be based on a microscopic examination of fixed tissues or preparations from the hemic system. Such Diagnosis shall be based solely on the accepted criteria of malignancy after a study of the histo-cytologic architecture or pattern of the suspected tumor, tissue and/or specimen. Clinical Diagnosis of Invasive Cancer will be accepted as evidence that Invasive Cancer exists when a pathological Diagnosis cannot be made, provided the medical evidence substantially documents the clinical Diagnosis of Invasive Cancer and the Insured Person receives treatment for Invasive Cancer.

**Licensed Health Care Practitioner** means any Physician, any registered professional nurse, licensed social worker, or other individual who meets such requirements as may be prescribed by the United States Secretary of the Treasury.

Licensed Health Care Practitioner does not include:
- (a) the Insured Person or the Owner; or
- (b) any Immediate Family Member; or
- (c) any person who customarily resides in the same household as the Insured Person or the Owner.

**Limb** means entire arm or entire leg.

**Major Heart Attack** means the death of a portion of the heart muscle resulting from inadequate blood supply to the relevant area. Major Heart Attack does NOT include angina or the chance finding of electrocardiographic (EKG) changes indicative of a previous heart attack.

The Diagnosis of Major Heart Attack must be made by a Physician and be based on the presence of chest pain and at least two of the following criteria:
- (a) new electrocardiographic (EKG) changes which support the Diagnosis; or
- (b) diagnostic elevation of cardiac enzymes or biomedical markers; or
- (c) confirmatory imaging studies such as cardiac catherization, thallium scans, MUGA scans or stress echocardiograms.

**Major Organ Transplant** means the receipt by transplant of any of the following organs or tissues: heart, lung, liver or pancreas.

The Diagnosis of Major Organ Transplant must be made by a Physician and must include documentation on the illness or injury that resulted in the need to undergo a Major Organ Transplant.

**Maximum Elected Death Benefit** means the Accelerated Coverage Amount available for acceleration as a Flexible Accelerated Benefit and shown in the Policy Schedule.

**Medically-Related** means a successive Qualifying Event that results from the same or related organic, pathological, or physiological causes, conditions or symptoms as a previous Qualifying Event where the Insured Person has, within one year prior to the Diagnosis or Certification of the successive Qualifying Event, received medical treatment for the previous Qualifying Event except for the taking of prescription drugs as prescribed or for routine follow-up visits to a Physician.

**Paralysis** means Quadriplegia, Paraplegia or Hemiplegia that is expected to last for a continuous 12-month period or longer from the date of the Diagnosis.

The Diagnosis of Paralysis must be made by a Physician and must be supported by the medical records of the Insured Person.

**Paraplegia** means the complete and irreversible Paralysis of both lower Limbs.

**Permanent/Permanently** means lasting at least 90 consecutive days and expected to remain unchanged from the date of Diagnosis.

**Physician** means any physician who is a doctor of medicine or osteopathy legally authorized to practice medicine and surgery in the United States by a federal or state licensing authority for such doctors. Physician does not include:
  (a) the Insured Person or the Owner; or
  (b) any Immediate Family Member; or
  (c) any person who customarily resides in the same household as the Insured Person or the Owner.

**Policy** means the Policy to which this Rider is attached.

**Policy Amount** means the amount of insurance coverage for the Insured Person under the Policy and any other Covered Rider. Policy Amount does not include the amount of insurance under any other rider(s) attached to the Policy.

**Quadriplegia** means the complete and irreversible Paralysis of both upper and lower Limbs.

**Qualifying Chronic Illness/Chronically Ill** means an illness or physical condition:
  (a) for which an Insured Person was Certified as having by a Licensed Health Care Practitioner not more than 12 months before the date of Our receipt at Our Home Office of such Certification pursuant to a claim under this Rider; and
  (b) for which an Insured Person was Certified as having by a Licensed Health Care Practitioner after such Insured Person's coverage under this Rider has been in force for 30 consecutive days; and
  (c) which Permanently affects the Insured Person so that he or she is:
    (1) unable to perform, without Substantial Assistance from another person, at least two Activities Of Daily Living due to a loss of functional capacity; or
    (2) requires Substantial Supervision by another person to protect him or her from threats to health and safety due to permanent Severe Cognitive Impairment; and
  (d) for which the Insured Person is under a plan of care prescribed by a Licensed Health Care Practitioner for necessary diagnostic, preventative, therapeutic, curing, treating, mitigating and rehabilitative services and for maintenance or personal care services required by a Chronically Ill person; and
  (e) which is not caused by a mental or nervous disorder (except for disorders comparable to Alzheimer's disease and similar forms of irreversible dementia), or alcoholism or drug addiction; and
  (f) which satisfies the requirements of the Filing An Accelerated Benefit Claim provision; and
  (g) which is not a Qualifying Terminal Illness.

**Qualifying Critical Illness** means any of the following illnesses or conditions - Major Heart Attack, Stroke, Coronary Artery Bypass, Invasive Cancer, End Stage Renal Failure, Major Organ Transplant, Paralysis, Coma and Severe Burn:

- (a) for which an Insured Person was Certified as having by a Physician not more than 12 months before the date of Our receipt of such Certification at Our Home Office pursuant to a claim under this Rider; and
- (b) for which an Insured Person is Diagnosed as having by a Physician after such Insured Person's coverage under this Rider has been in force for 30 consecutive days, or 90 consecutive days for Invasive Cancer; and
- (c) which satisfies the requirements of the Filing An Accelerated Benefit Claim provision; and
- (d) which is not a Qualifying Chronic Illness or Qualifying Terminal Illness.

**Qualifying Event** means a Qualifying Critical Illness, Qualifying Chronic Illness or Qualifying Terminal Illness that is Diagnosed or Certified, as the case may be, while the Policy is in force.

**Qualifying Terminal Illness** means an Illness or physical condition:

- (a) for which an Insured Person is Diagnosed and Certified by a Physician as being reasonably expected to result in such Insured Person's death within 24 months from the date of Diagnosis; and
- (b) which is Diagnosed and Certified by a Physician after an Insured Person's coverage under this Rider is in force; and
- (c) which satisfies the requirements of the Filing An Accelerated Benefit Claim provision.

**Severe Burn** means the cosmetic disfigurement of body surface or area that is a full-thickness or third-degree burn covering at least 20% of the body surface.

**Severe Cognitive Impairment** means a loss or deterioration in intellectual capacity that is comparable to (and includes) Alzheimer's disease and similar forms of irreversible dementia; and is measured by clinical evidence and standardized tests that reliably measure impairment in the Insured Person's:

- (a) short-term or long-term memory; and
- (b) orientation to people, places or time; and
- (c) deductive or abstract reasoning.

**Stand-by Assistance** means the physical presence of another person within arm's reach of the Chronically Ill Insured Person that is necessary to prevent, by physical intervention, injury to the Chronically Ill Insured Person while he or she is performing any one of the Activities Of Daily Living.

**Subsequent Qualifying Event(s)** means the Qualifying Event where:

- (a) We previously paid a Defined Accelerated Benefit Amount or a Flexible Accelerated Benefit Amount due to a Qualifying Event; and
- (b) No previous Qualifying Event was a Qualifying Terminal Illness; and
- (c) No previous Qualifying Event was a Qualifying Chronic Illness unless:
   - (1) the Owner completes an application and submits evidence of insurability in writing acceptable to Us to re-establish Qualifying Chronic Illness as a Qualifying Event under this Rider; and
   - (2) We, by endorsement of the Policy after consideration of such application and evidence of insurability, re-establish Qualifying Chronic Illness as a Qualifying Event under this Rider.

A Qualifying Event is not a Subsequent Qualifying Event if:

- (a) as to the Qualifying Critical Illness or the Qualifying Chronic Illness comprising the Qualifying Event, the Diagnosis of such Qualifying Critical Illness or the Certification of such Qualifying Chronic Illness occurs 90 days or less from the date of Diagnosis or Certification of any prior Qualifying Event; or
- (b) it is Medically-Related to any prior Qualifying Event.

**Substantial Assistance** means Hands-on Assistance or Stand-by Assistance.

**Substantial Supervision** means continual supervision (which may include cueing by verbal prompting, gestures or other demonstrations) by another person that is necessary to protect the Insured Person from threats to his or her health or safety (including, but not limited to, such threats as may result from wandering).

**Stroke** means a cerebrovascular incident caused by infarction of brain tissue, cerebral hemorrhage, thrombosis or embolization from an extra-cranial source lasting more than 24 hours and producing measurable neurological deficit that persists for at least 30 consecutive days following the occurrence of the Stroke. Stroke does NOT include Transient Ischemic Attacks (TIAs), Vertebro-basilar insufficiency or incidental findings on imaging studies.

The Diagnosis of Stroke must be made by a neurologist based on documented neurological deficits and confirmatory neuroimaging studies.

**Transient Ischemic Attack (TIA)** means a neurological condition or event having the signs and symptoms of Stroke, which passes within a short time with no residual signs, symptoms, deficits or abnormalities that are revealed or shown on neuroimaging studies.

**We, Our** or **Us** means American General Life and Accident Insurance Company.

**You** or **Your** means the Owner of this Rider.

### PAYMENT UPON ACCELERATION DUE TO QUALIFYING EVENT

We will, if an Insured Person experiences a Qualifying Event or a Subsequent Qualifying Event under this Rider, pay all Defined Accelerated Benefit Amounts shown in the Policy Schedule, if any, and any Flexible Accelerated Benefit Amount payable.

The sum of all Defined Accelerated Benefit Amounts, if any, will be reduced by:
   (a) an administrative charge not to exceed the Maximum Administrative Charge per Qualifying Event shown on the Policy Schedule; and
   (b) payment of any unpaid but due Policy premiums up to the Accelerated Benefit Payment Date; and
   (c) payment of a pro rata amount of any policy loans.

Subject to the conditions described in this Rider, We will pay to the Owner, as a lump sum, all Defined Accelerated Benefit Amounts, if any, as of the Accelerated Benefit Payment Date after You file a claim for Defined Accelerated Benefit Amounts for an Insured Person under this Rider.

We will determine the Flexible Accelerated Benefit Amount as of the Accelerated Benefit Payment Date, after You file a claim for a Flexible Accelerated Benefit for an Insured Person under this Rider.

The Flexible Accelerated Benefit Amount will be equal to the Flexible Accelerated Benefit reduced by the following deductions to the extent not already deducted from a Defined Accelerated Benefit Amount paid on account of the same Qualifying Event or Subsequent Qualifying Event:
   (a) an administrative charge not to exceed the Maximum Administrative Charge per Qualifying Event shown on the Policy Schedule; and
   (b) payment of any unpaid but due Policy premiums up to the Accelerated Benefit Payment Date; and
   (c) payment of a pro rata amount of any policy loans.

As a result of these deductions and the actuarial discount discussed in the definition of Flexible Accelerated Benefit, the Flexible Accelerated Benefit Amount will in all cases be less than the Elected Death Benefit, and may be substantially less.

### ELECTED DEATH BENEFIT LIMITATIONS

The Elected Death Benefit on any given Accelerated Benefit Payment Date must NOT:
   (a) exceed the Maximum Elected Death Benefit shown on the Policy Schedule; or
   (b) reduce the Policy Amount below the minimum amount under Our then-current rules.

## POLICY ADJUSTMENTS ON AN ACCELERATED BENEFIT PAYMENT DATE

Upon payment of any Defined Accelerated Benefit Amount or any Flexible Accelerated Benefit Amount for an Insured Person on a given Accelerated Benefit Payment Date, the following adjustments will be made:

(a) the Face Amount or Specified Amount, as the case may be, and the Accelerated Coverage Amount as to each affected Coverage Segment under the Policy or any Covered Riders will be reduced by Defined Accelerated Benefit Amounts and by the Elected Death Benefit; and

(b) the Defined Accelerated Benefit Percentage relating to a particular Coverage Segment will be multiplied by the Subsequent Defined Accelerated Benefit Factor shown on the Policy Schedule, and the product thereof will become the new Defined Accelerated Benefit Percentage, and the Subsequent Defined Accelerated Benefit Factor will be reset to 1.0; and

(c) each Defined Accelerated Benefit as to an affected Coverage Segment will be recalculated; and

(d) the Maximum Elected Death Benefit as to each affected Coverage Segment will be recalculated; and

(e) if applicable, the Surrender Charges, Accumulation Value, Cash Surrender Value, cash value, and any Policy loans will be reduced in the same proportion as the Insured Person's Policy Amount; and

(f) the future premiums and charges for the Insured Person's life insurance under an affected Coverage Segment under the Policy and any Covered Riders will be set as if such Coverage Segment had been originally issued at the reduced amount.

## ADJUSTMENTS DUE TO CERTAIN TRANSACTIONS

The benefits provided under this Rider will not be affected by an increase in the Insured Person's life insurance coverage under the Policy or covered Rider.

If you reduce an Insured Person's life insurance coverage under the Policy or Covered Rider (except pursuant to a claim under an accelerated benefit rider attached to the Policy), and if the sum of the Insured Person's accelerated benefit coverage amounts under this Rider and all other accelerated benefit riders attached to the Policy would immediately exceed the Insured Person's life insurance coverage under the Policy or Covered Rider, then the Insured Person's Accelerated Coverage Amount under this Rider will be reduced.

We will provide you with written notice if an Insured Person's coverage under this rider must be reduced due to a requested reduction of life insurance coverage. You may then, in writing, notify us of the amount of accelerated benefit coverage that you want to remain in force for such Insured Person under this Rider. Such written notification, if given by You, must be received by Us at Our Home Office before the effective date of the reduction in the Insured Person's life insurance coverage. You may select the Insured Person's coverage amount that will remain in force under this Rider subject to the following conditions:

(a) the sum of the Insured Person's Accelerated Coverage Amounts under this Rider and coverage amounts under all other accelerated benefit riders attached to the Policy must not exceed the Insured Person's new life insurance coverage amount in force following the reduction; and

(b) the Insured Person's new Defined Accelerated Benefit Amount under this Rider, if any, must not be greater than the Defined Accelerated Benefit Amount in effect prior to the reduction, multiplied by the ratio of the Insured Person's new Accelerated Coverage Amount to the Accelerated Coverage Amount prior to the reduction; and

(c) the Specified Amount or Face Amount, as the case may be, may not be below the minimum amount under Our then-current rules.

In the event that We do not receive a response from You prior to the effective date of the reduction in the Insured Person's life insurance coverage, the Insured Person's Accelerated Coverage Amounts under this Rider and coverage amounts under all other accelerated benefit riders attached to the Policy will be reduced in the same proportion as the amount by which the sum of the Insured Person's accelerated benefit coverage amounts must be reduced so that this sum does not exceed the Insured Person's life insurance coverage amount following the reduction.

## FILING AN ACCELERATED BENEFIT CLAIM

To begin the claim process under this Rider, You must provide all the following items:

(a) a completed claim form acceptable to Us, as applicable; and

(b) any authorization required by Us to obtain information or documentation from a third party; and

(c) Certification of a Qualifying Chronic Illness by a Licensed Health Care Practitioner, Certification of a Critical Illness by a Physician or Certification of a Qualifying Terminal Illness by a Physician; and

(d) proof satisfactory to Us including, but not limited to, a written definitive Diagnosis and Certification of an Insured Person's Qualifying Critical Illness or Qualifying Terminal Illness signed by a Physician, or written definitive Certification of an Insured Person's Qualifying Chronic Illness signed by a Licensed Health Care Practitioner, based upon the use of evaluations, clinical and/or laboratory investigations, tests and observations that follow recommended and accepted medical or social work practices, as applicable, and complete records of the Insured Person's medical history, Diagnoses and treatments; and

(e) the written consent, on a form provided by Us, of any irrevocable Beneficiary, assignee or other required party to Your claim for a Defined Accelerated Benefit, if any, or Flexible Accelerated Benefit under this Rider.

We will provide You with the necessary claim form within 15 days of Your request for acceleration. If this form is not sent to You within 15 days, You will have met the claim requirements by providing Us a written statement of the nature of the Qualifying Event, a Certification of the Qualifying Event and a description of any benefit claimed.

Prior to or concurrent with Your claim for an accelerated benefit, We will provide You, and any irrevocable beneficiary, a statement demonstrating the effect of payment of an accelerated benefit amount on the cash value, death benefit, premium or cost of insurance and any policy loan under this Policy.

We have the right to require, and will pay for, an examination of the Insured Person by a Physician or Licensed Health Care Practitioner of Our choice, as applicable, and to acquire a second opinion from another Physician or Licensed Health Care Practitioner. In case of conflicting opinions, We have the right to require, and will pay for, a third opinion from another Physician or Licensed Health Care Practitioner, as applicable, mutually acceptable to You and Us, which shall be determinative of the Certification of a Qualifying Critical Illness, Qualifying Chronic Illness or Qualifying Terminal Illness.

## PAYMENT OF AN ACCELERATED BENEFIT

Any benefit under this Rider will be paid to You or Your estate while the Insured Person is living, unless the benefit has been otherwise assigned or designated by You.

If, after You have filed a claim pursuant to this Rider, We determine that the conditions for payment of a Defined Accelerated Benefit have been met, We will pay such benefit after receipt of proof satisfactory to Us.

If, after You have filed a claim pursuant to this Rider, We determine that the conditions for payment of a Flexible Accelerated Benefit have been met, We will notify You of the Flexible Accelerated Benefit Amount, if any, and will send You an election form. To elect a Flexible Accelerated Benefit Amount, You must complete the election form and return it to Us within 60 days of receipt.

Your claim for a Defined Accelerated Benefit and Your election of a Flexible Accelerated Benefit will automatically be voided, and no Defined Accelerated Benefit Amount or Flexible Accelerated Benefit Amount will be payable if the Insured Person dies before We pay such Defined Accelerated Benefit Amount or Flexible Accelerated Benefit Amount. In such a situation, the Death Benefit or Death Benefit Proceeds, as the case may be, will be payable pursuant to the terms of the Policy. For purposes of this provision, such payment shall be deemed to have occurred if We have placed a check containing Benefits in the U.S. mail, placed a check containing Benefits in the hands of a recognized overnight delivery service for delivery or established a retained asset account at the Owner's direction.

## NOTICE

You are not eligible to claim a Defined Accelerated Benefit or to elect a Flexible Accelerated Benefit under this Rider if:

(a) You are required by law to use this Rider to meet the claims of creditors, whether in bankruptcy or otherwise; or

(b) You are required by a government agency to use this Rider to apply for, obtain or keep a government benefit or entitlement; or

(c) You are required by a court order to maintain such Insured Person's life insurance coverage under this Policy and any covered riders for another person's benefit; or

(d) any Qualifying Chronic Illness, any Qualifying Critical Illness or any Qualifying Terminal Illness results directly from the Insured Person's self-inflicted injury or attempted suicide, while sane or insane; or

(e) the consent of any irrevocable Beneficiary, assignee or other required party to Your election of an Accelerated Benefit has not been obtained; or

(f) receipt of such benefit would cause the Policy to fail to qualify as life insurance under applicable tax laws.

## PREMIUMS OR COST OF INSURANCE

The premium or Monthly Cost of Insurance for this Rider is shown on the Policy Schedule. Premiums for this Rider are payable in addition to and under the same conditions as premiums for the Policy.

If Monthly Deductions are assessed to provide for the Insured Person's coverage under riders, the Monthly Cost of Insurance for this Rider will be included in the Monthly Deduction while this Rider is in force. The Monthly Cost of Insurance rate used to calculate the Monthly Cost of Insurance under this Rider depends on the Insured Person's age, gender, and premium class. We calculate the Monthly Cost of Insurance for each Insured Person's coverage under this Rider at the beginning of each Policy Month on the Deduction Day based on such Insured Person's Defined Accelerated Benefit Coverage Amount under this Rider and Amount at Risk under the Policy or Covered Rider on such

date. In no event will the Monthly Cost of Insurance for an Insured Person's coverage under the Rider exceed the amount shown on the Policy Schedule.

## CONVERSION

If the plan of insurance for the Insured Person's life insurance coverage under the Policy is a term life insurance policy or term life insurance rider and if all or a portion of the Insured Person's life insurance coverage is converted prior to the Rider Conversion Expiry Date shown on the Policy Schedule, the New Policy may include this Rider subject to the following conditions:

(a) This Rider must then be available under the plan of insurance for the New Policy; and

(b) You must apply for such Rider to be attached to the New Policy.

You may select the Accelerated Coverage Amount under the New Policy. The Accelerated Coverage Amount under the New Policy may not exceed the lesser of:

(a) the converted life insurance coverage amount; or

(b) the Accelerated Coverage Amount under this Policy immediately prior to conversion; or

(c) the maximum Accelerated Coverage Amount available under the New Policy based on the coverage limits in effect at the time of conversion.

The Accelerated Coverage Amount under this Policy will be reduced to reflect the Accelerated Coverage Amount you have selected for the New Policy.

The Accelerated Coverage Amount under the New Policy will be issued with the same age, premium class, and effective date as the Accelerated Coverage Amount that is converted from this Policy. The Defined Accelerated Benefit Percentage and Subsequent Defined Accelerated Benefit Factor on the date the rider is issued on the New Policy will be set to the Defined Accelerated Benefit Percentage and Subsequent Defined Accelerated Benefit Factor in effect under this Policy immediately prior to conversion, and the Defined Accelerated Benefit Amount and Maximum Elected Death Benefit will be calculated accordingly.



## WAIVER OF RIDER'S MONTHLY DEDUCTION BENEFIT

If the Policy Schedule does not show the Waiver of Monthly Deduction Rider, You do not have the Waiver of Rider's Monthly Deduction Benefit; therefore, it is not applicable.

If the Monthly Deduction under the Policy is waived for Total Disability of the Insured under a Waiver of Monthly Deduction Rider attached to the Policy, the Monthly Deduction for this Rider due at the same time will also be waived.

If this Rider and the Waiver of Monthly Deduction Rider are both in force on a given monthly Deduction Day, the cost of insurance for the Waiver of Monthly Deduction Rider will be increased to include Waiver of Monthly Deduction coverage for this Rider. The amount of such increase on a given monthly Deduction Day will be equal to the cost of insurance due for Waiver of Monthly Deduction coverage for the Policy, multiplied by the ratio of the Monthly Deduction for this Rider to the Monthly Deduction for the Policy on such date.

## MISSTATEMENT OF AGE, GENDER OR NON-USE OF TOBACCO AND/OR NICOTINE

Notwithstanding any other provision in the Policy or in a rider thereto, if We determine, with respect to an Insured Person, that:

    (a) the Policy or a Covered Rider was issued in a Premium Class based upon a representation in the application of the Insured Person's age, gender, or non-use of tobacco and/or nicotine; and

    (b) the Insured Person's representation in his or her application for coverage regarding his or her age, gender, or non-use of tobacco and/or nicotine was incorrect; and

    (c) a corrected Premium Class should be applied to such Insured Person,

We may, using a corrected Premium Class,

    (a) adjust the Policy's premium or monthly deduction for the Policy, including all riders thereto, to reflect the application of the corrected Premium Class, and

    (b) adjust the Face Amount or Specified Amount of an Insured Person's coverage under the Policy or a Covered Rider to the Face Amount or Specified Amount that would have been purchased by the monthly deduction just prior to the Insured Person's death or by the most-recently charged monthly deduction if the Insured Person is not dead.

We may also adjust all Accelerated Coverage Amount and Defined Accelerated Benefits under a rider attached to the Policy to reflect the application of the corrected Premium Class and the adjustment of a Face Amount or Specified Amount as described above.

With respect to an incorrect representation in the Insured Person's application for coverage regarding non-use of tobacco and/or nicotine, We may exercise Our rights described only within the first two years from the date of issue.

## INCONTESTABILITY

After an Insured Person's insurance under this Rider has been in force during the lifetime of the Insured Person for two years from the Effective Date of such Insured Person's insurance under this Rider or from the date of the last reinstatement of such insurance, whichever occurs last, We will not contest the Insured Person's insurance under this Rider, except We may contest the Insured Person's insurance under this Rider for any claim for a Qualifying Event that was Certified or Diagnosed before the end of such two-year period.

## REINSTATEMENT

If the Policy and this Rider are terminated, and the Policy is reinstated, then this Rider will also be reinstated, subject to submission of evidence of insurability satisfactory to Us.

**TERMINATION**

Coverage for an Insured Person under this Rider will terminate on the earliest of:

    (a) the date on which there is no longer, as to such Insured Person, any Accelerated Coverage Amount available for acceleration under this Rider; or

    (b) except as otherwise provided by this Rider, the date on which such Insured Person's life insurance coverage under the Policy and any Covered Riders terminates; or

    (c) any date requested by You in writing; or

    (d) the date this Rider terminates.

This Rider will terminate on the earliest of:

    (a) the date on which there is no longer, as to any Insured Person, any Accelerated Coverage Amount available for acceleration under this Rider; or

    (b) except as otherwise provided by this Rider, the date the Policy terminates; or

    (c) the end of the Grace Period, or

    (d) any date requested by You in writing; or

    (e) the date You elect a nonforfeiture option under the Policy; or

    (f) the date on which the last surviving Insured Person dies; or

    (g) the Rider Termination Date shown on the Policy Schedule.

Termination of this Rider will not exclude the payment of benefits for any Qualifying Event that occurred while this Rider was in force.

**GENERAL**

This Rider is a part of the Policy to which it is attached. The Benefits provided by this Rider are subject to all the provisions and requirements of this Rider and the Policy. This Rider's provisions apply in lieu of any Policy provisions to the contrary. This Rider has no cash or loan value.

**AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY**

SECRETARY

F DESK CODE = I,Q



Jonnathan Meeks - 211543870

# ENDORSEMENT

**Insured:** Johnathan Meeks

**Policy Number:** 211543870

**Maximum Acceleratable Coverage:** $100,000

This Endorsement is made a part of the Policy to which it is attached.

**Maximum Acceleratable Coverage** means the portion of the Face Amount or the Specified Amount, as the case may be, that You are potentially able to accelerate under one or more accelerated benefit riders attached to this Policy. See the Policy Schedule for all accelerated benefit riders attached to Your Policy.

Except as otherwise limited by operation of any other provisions of this or any other policy, You may reduce the accelerated life insurance amount of any accelerated benefit rider as to any Insured Person under this Policy and create within another life insurance policy on the life of such Insured Persons, issued by Us and owned by You, a new accelerated benefit rider made available by Us having the same accelerated life insurance amount and Effective Date.

In addition, except as otherwise limited by operation of any other provisions of this or any other Policy, You may reduce the accelerated life insurance amount of any accelerated benefit rider as to any Insured Person under another life insurance policy issued by Us and owned by You and create within the Policy a new accelerated benefit rider made available by Us for such Insured Person having the same accelerated life insurance amount and Effective Date.

In no case may the amount of life insurance that may be accelerated exceed the Maximum Acceleratable Coverage.

The effective date of this endorsement is September 16, 2011.

### AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY

SECRETARY

ICC10 AGLA 10-17

Johnathan Meeks - 211543070

**APPLICATION FOR LIFE INSURANCE**
American General Life and Accident Insurance Company
American General Center • Nashville, Tennessee 37250-0001

**211 543 870**
10   0211543870   0

1. a. Primary Proposed Insured Name (Print full name) _JOENATHAN   MEEKS_

b. Address _4252   PARKFOREST     Memphis. TENN 38141_
      Street                                    City                    State              Zip Code       Country

Birth Date and Place
Month   Day   Year   State   Country                          Age   Gender
_MS| USA_                                      ☑ Male
                                                                              ☐ Female

c. SSN: ▮▮▮▮▮▮▮▮▮▮

d. Marital/Domestic Status: ☐ Single   ☐ Married   ☐ Widowed   ☐ Divorced   ☐ Other

e. Driver's License No ▮▮▮▮▮▮▮▮   f. State of Issue _Tenn_
   If over age 16 and no license, please explain.

g. Annual Earned Income _45,000_   h. Other Sources of Income

i. Occupation _Concrete Contractor_   j. How long in occupation _10 yrs  or more_

k. Employer _SELF-EMPLOYED_   l. Job duties _CONTRACTOR_

m. Length of time employed by current employer   n. Average No. of hours worked per week in occupation

o. Is Primary Proposed Insured actively at work and able to perform all regular job duties?  ☐ Yes  ☐ No
   If "No," explain:

p. If no earned income, provide details of prior employment and job duties

q. If unemployed, retired prior to age 55, disabled or receiving Supplemental Security Income (SSI), provide explanation

2. a. Additional Proposed Insured (If coverage applied for)

b. Address
      Street                                    City                    State              Zip Code       Country

Birth Date and Place
Month   Day   Year   State   Country                          Age   Gender
                                                                              ☐ Male
                                                                              ☐ Female

c. SSN:

d. Marital/Domestic Status:  ☐ Single   ☐ Married   ☐ Widowed   ☐ Divorced   ☐ Other

e. Driver's License No.   f. State of Issue
   If over age 16 and no license, please explain.

g. Annual Earned Income   h. Other Sources of Income

i. Occupation   j. How long in occupation

k. Employer   l. Job duties

m. Length of time employed by current employer   n. Average No. of hours worked per week in occupation

o. Is Additional Proposed Insured actively at work and able to perform all regular job duties?  ☐ Yes  ☐ No
   If "No," explain:

p. If no earned income, provide details of prior employment and job duties

q. If unemployed, retired prior to age 55, disabled or receiving Supplemental Security Income (SSI), provide explanation

3. Enter names of children, stepchildren and legally adopted children for whom application for coverage under a Child Term Rider is made who are: (1) members of your immediate family and household; and (2) under the age of 18.

| Full Name | Age | Birth Date | | | Gender | Relationship (if stepchild, consent required) | For any child under age one (including Primary Proposed Insured) |
| | | Month | Day | Year | | | |
|---|---|---|---|---|---|---|---|
| a. | | | | | | | Name: |
| b. | | | | | | | Birth Weight____ lbs. ____ oz. |
| c. | | | | | | | Weight Now ____ lbs. ____ oz. |
| d. | | | | | | | |

4. Owner Name (If other than Primary Proposed Insured)

Address
      Street                                    City                    State              Zip Code

SSN/TIN:                              Relationship to Primary Proposed Insured

Home Office Use Only

EXTRA LABEL (if needed)

XN 32823377

Primary Proposed Insured_____

5. Premium Payor Name (If other than Primary Proposed Insured)_____

Address_____
          Street                 City         State       Zip Code

SSN/TIN:_____    Relationship to Primary Proposed Insured_____

6. Complete for Primary Proposed Insured:
   a. Plan Name *AGLA Flex Term*    If Term: Duration _____   Ins Amount $ *100,000*

   If Universal Life:  Death Benefit   ☐ Option A    ☐ Option B

   b. Benefits & Riders
   ☐ Waiver Rider
   ☐ Additional Insurance Option $ _____
   ☐ Accidental Death $ _____
   ☐ Single Premium Whole Life $ _____
   ☐ Spouse Level Term Rider $ _____ Amt
   ☐ Accelerated Benefit Rider 2 Initial Defined Benefit – Primary Proposed Insured
   ☐ Accelerated Benefit Rider 2 Initial Defined Benefit – Additional Proposed Insured
   ☐ Primary Proposed Insured
       ☐ Disability Income Rider 2
       ☐ Disability Income Rider 5
       Monthly Benefit _____
       Occ. Class _____
   ☐ Other _____

   ☐ Terminal Illness Rider
   ☐ Monthly Guarantee Premium Rider
   ☐ Children's Term Rider $ _____ Amt
   ☐ Level Term Rider $ _____ Amt
   ☐ Additional Insured Rider $ _____ Amt
   ☐ 5%  ☐ 10%  ☐ Other _____
   ☐ 5%  ☐ 10%  ☐ Other _____
   ☐ Additional Proposed Insured
       ☐ Disability Income Rider 2
       ☐ Disability Income Rider 5
       Monthly Benefit _____
       Occ. Class _____
   ☐ Other _____

   ☐ Chronic Illness Accelerated Benefit Rider II – Primary Proposed Insured
   To apply for the Chronic Illness Accelerated Death Benefit Rider II, select the appropriate boxes in items 1 and 2 below
   1. a) ☐ I am applying for the Chronic Illness Accelerated Death Benefit Rider II.
      b) Initial Monthly Benefit Amount $ _____
      c) Benefit Period  ☐ 24 Months  ☐ 36 Months  ☐ 48 Months  ☐ 60 Months
      d) Other_____
   2. a) ☐ I am NOT applying for the Extension of Benefit option.
          ☐ I am applying for the Extension of Benefit option WITH the Cost of Living Allowance benefit.
             Cost of Living Increase Percentage _____ %
          ☐ I am applying for the Extension of Benefit option WITHOUT the Cost of Living Allowance benefit.
             ☐ I have reviewed the Outline of Coverage and the graphs that compare the benefits and cost of insurance of this Rider with and
                without the Cost of Living Allowance benefit. Specifically, I have reviewed my options and I reject the Cost of Living Allowance
                benefit.
      b) Benefit Period (must be less than or equal to the Benefit Period designated for the Rider) ☐ 24 Months ☐ 36 Months ☐ 48 Months ☐ 60 Months

   ☐ Chronic Illness Accelerated Benefit Rider II – Additional Proposed Insured
   To apply for the Chronic Illness Accelerated Death Benefit Rider II, select the appropriate boxes in items 1 and 2 below
   1. a) ☐ I am applying for the Chronic Illness Accelerated Death Benefit Rider II.
      b) Initial Monthly Benefit Amount $ _____
      c) Benefit Period  ☐ 24 Months  ☐ 36 Months  ☐ 48 Months  ☐ 60 Months
      d) Other_____
   2. a) ☐ I am NOT applying for the Extension of Benefit option.
          ☐ I am applying for the Extension of Benefit option WITH the Cost of Living Allowance benefit.
             Cost of Living Increase Percentage _____ %
          ☐ I am applying for the Extension of Benefit option WITHOUT the Cost of Living Allowance benefit.
             ☐ I have reviewed the Outline of Coverage and the graphs that compare the benefits and cost of insurance of this Rider with and
                without the Cost of Living Allowance benefit. Specifically, I have reviewed my options and I reject the Cost of Living Allowance
                benefit.
      b) Benefit Period (must be less than or equal to the Benefit Period designated for the Rider) ☐ 24 Months ☐ 36 Months ☐ 48 Months ☐ 60 Months

DESK CODE   X?X                                                              Jonathan Meeks - 211943070

Primary Proposed Insured _Jonathan Meek_

7. First Beneficiary _Vickie A King_        _Fiance_
   _(Name)_                          Relationship        Age          SSN/TIN
   _4252 Park Forest Mph   TN_
                              Address

   Secondary Beneficiary _____
                          Name              Relationship    Age        SSN/TIN

                          _____
                                  Address

8. Premium and Payment
   a. Premium $ _70,04_          Lump Sum _____          ☐ 1035 exchange
   b. Payment Mode: ☐A  ☐S  ☐Q  ☐M     Planned Periodic Premium _____
   ☐ Other _____
   ☑ Automatic Bank Check                    ☐ Add to existing ABC account, policy no. _____
   ☑ AG Payroll Deduction (AGLA employees only)   ☐ New payroll account no. _____
   ☐ Payroll Deduction                       ☐ Add to existing PD account no. _____
   If premium mode is payroll deduction, are premiums to be paid with pre-tax dollars under a Section 125 (cafeteria plan sponsored by your employer)?
   ☐ Yes  ☐ No        Anticipated Effective Date of Coverage_____
   c. If Available, is Automatic Premium Loan Provision to be in effect?   ☐ Yes  ☐ No

   If one or more policies are being applied for at this time having the same Owner and Premium Mode/Method, please complete the section(s) below:

9. a. Individual to be insured is the ☐ Primary Proposed Insured or ☐ Additional Proposed Insured listed on this application.
   b. Plan Name_____ If Term: Duration _____ Ins Amount $ _____ If UL: Death Benefit ☐ Option A ☐ Option B
   c. Benefits & Riders
      ☐ Waiver Rider
      ☐ Other _____                       ☐ Other _____
   d. If beneficiary is to be other than as listed in question 7 above, please complete the following:

   First Beneficiary _____
                      Name              Relationship    Age        SSN/TIN

                      _____
                              Address

   Secondary Beneficiary _____
                          Name              Relationship    Age        SSN/TIN

                          _____
                                  Address
   e. Premium $ _____   ☐ Lump Sum _____   ☐ 1035 exchange   ☐ Planned Periodic Premium_____

10. a. Individual to be insured is the ☐ Primary Proposed Insured or ☐ Additional Proposed Insured listed on this application.
    b. Plan Name_____ If Term: Duration _____ Ins Amount $ _____ If UL: Death Benefit ☐ Option A ☐ Option B
    c. Benefits & Riders
       ☐ Waiver Rider
       ☐ Other _____                      ☐ Other _____
    d. If beneficiary is to be other than as listed in question 7 above, please complete the following:

    First Beneficiary _____
                       Name              Relationship    Age        SSN/TIN

                       _____
                               Address

    Secondary Beneficiary _____
                           Name              Relationship    Age        SSN/TIN

                           _____
                                   Address
    e. Premium $ _____   ☐ Lump Sum _____   ☐ 1035 exchange   ☐ Planned Periodic Premium_____

Primary Proposed Insured *Joenathan Meeks*

| BACKGROUND/HEALTH QUESTIONS | | | | | | YES | NO |
|---|---|---|---|---|---|---|---|

11. Does any proposed insured have any of the coverages listed below inforce or have any pending application for such coverage with this Company or any other company? Check all applicable boxes. .......... ☐ ☑
If "Yes,"

| Name | | | Co. Name | Amt. of Coverage/Benefit | Pol. No. |
|---|---|---|---|---|---|
| ☐ Life | ☐ Health | ☐ Long-term Care | ☐ Disability/Period _____ | ☐ Annuity | |

| Name | | | Co. Name | Amt. of Coverage/Benefit | Pol. No. |
|---|---|---|---|---|---|
| ☐ Life | ☐ Health | ☐ Long-term Care | ☐ Disability/Period _____ | ☐ Annuity | |

| Name | | | Co. Name | Amt. of Coverage/Benefit | Pol. No. |
|---|---|---|---|---|---|
| ☐ Life | ☐ Health | ☐ Long-term Care | ☐ Disability/Period _____ | ☐ Annuity | |

12. Will any existing insurance coverage or annuity contract be replaced or changed if any policy applied for is issued? .......... ☐ ☑
If "Yes," complete the necessary replacement forms and provide details below.

| Name | Co. Name | Type of Coverage | Amt. of Coverage/Benefit | Pol. No. |
|---|---|---|---|---|
| Name | Co. Name | Type of Coverage | Amt. of Coverage/Benefit | Pol. No. |
| Name | Co. Name | Type of Coverage | Amt. of Coverage/Benefit | Pol. No. |

13. Within the past 5 years, has any proposed insured used tobacco (cigarettes, cigars, pipe, snuff, chewing tobacco) or nicotine patches, nicotine gum or any other form of nicotine? If "Yes," provide details below .......... ☐ ☑

| Name | Type | Date of Last Use | Frequency/Amount |
|---|---|---|---|
| Name | Type | Date of Last Use | Frequency/Amount |

14. Has any proposed insured ever had an application for insurance modified, rated, declined, postponed, or withdrawn? .......... ☐ ☑
If "Yes," provide details below.

| Name | Type of Coverage | Date | Details |
|---|---|---|---|
| Name | Type of Coverage | Date | Details |

15. Within the past 5 years, has any proposed insured been convicted of, paid a fine/ticket or pled guilty to reckless driving, driving while intoxicated, or had a driver's license revoked or suspended, or, within the past 3 years, had any moving traffic violations? .......... ☐ ☑
If "Yes,"

| Name | Type of Violation | Duration (if applicable) | Date of Incident | State of Incident |
|---|---|---|---|---|
| Details | | | | |
| Name | Type of Violation | Duration (if applicable) | Date of Incident | State of Incident |
| Details | | | | |

16. Has any proposed insured ever been convicted of, pled guilty to, or pled no contest to a felony, or is any such charge pending against him/her? .......... ☐ ☑
If "Yes,"

| Name | Date of Occurrence | County and State | Disposition |
|---|---|---|---|
| Details | | | |
| Name | Date of Occurrence | County and State | Disposition |
| Details | | | |

POLISK CODE PIQ                                                                    Jonnathan Meeks - 211543670

Primary Proposed Insured _Joenathan Meeks_

|  | | | YES | NO |
|---|---|---|---|---|

17. Does any proposed insured intend to travel or reside outside of the United States within the next year?..............  ☐  ☒
If "Yes,"

| Name(s) | City/Country where traveling | Length of Stay | Times Per Year |
|---|---|---|---|
| Purpose of Travel | Do you plan to visit non-urban areas | Trips outside of U.S. in prior two years | |
| Name(s) | City/Country where traveling | Length of Stay | Times Per Year |
| Purpose of Travel | Do you plan to visit non-urban areas | Trips outside of U.S. in prior two years | |

18. Is any proposed insured **NOT** a citizen of the United States? ............................................................  ☐  ☒
If "Yes,"

| | |
|---|---|
| Name of proposed insured _____ | Name of proposed insured _____ |
| Date of entry into the U.S. _____ | Date of entry into the U.S. _____ |
| Name of country of citizenship _____ | Name of country of citizenship _____ |
| Have Permanent Resident Card?  ☐ Yes  ☐ No | Have Permanent Resident Card?  ☐ Yes  ☐ No |
| If "Yes," Provide A # _____ | If "Yes," Provide A # _____ |
| If No, does the proposed insured have a Visa?  ☐ Yes  ☐ No | If No, does the proposed insured have a Visa?  ☐ Yes  ☐ No |
| If "Yes," Type of Visa: _____ (provide copy) | If "Yes," Type of Visa: _____ (provide copy) |
| Intentions after expiration of Visa _____ | Intentions after expiration of Visa _____ |
| Does the proposed insured own a home in the U.S.? | Does the proposed insured own a home in the U.S.? |
| ☐ Yes   ☐ No | ☐ Yes   ☐ No |
| Are any family members U.S. Citizens or Permanent Residents? | Are any family members U.S. Citizens or Permanent Residents? |
| ☐ Yes   ☐ No | ☐ Yes   ☐ No |
| If "Yes," give details_____ | If "Yes," give details_____ |
| If no Permanent Resident Card and no Visa, please explain: | If no Permanent Resident Card and no Visa, please explain: |

19. Within the past 5 years, has any proposed insured flown as a pilot, student pilot or crew member of any aircraft, or does any proposed insured have any intention to do so in the next 2 years?.........................................................  ☐  ☒
If "Yes," Name _____  Details _____
Name _____  Details _____
If "Yes," submit an Aviation Questionnaire.

20. Within the past 5 years, has any proposed insured engaged in motor sports events or racing (auto, truck, cycle, boat, etc.), rock or mountain climbing; skin or scuba diving; aeronautics (hang-gliding, sky diving, parachuting, ultra light, soaring, ballooning)? ...............  ☐  ☒
If "Yes," Name _____  Details _____
Name _____  Details _____
If "Yes," submit an Avocation Questionnaire.

**AGENT USE ONLY**

MEDICAL EXAMINATION WILL BE SCHEDULED FOR: Primary Proposed Insured .....................................  ☐  ☒
Additional Proposed Insured .....................................  ☐  ☒

For any person who will be scheduled for a medical examination, please complete Questions 21. a. and 21. b.
21. a. Within the past 5 years, has any proposed insured been diagnosed as having or been treated for alcoholism, cancer or malignancy, HIV, heart attack, angina, kidney failure, Type 1 diabetes, emphysema, organ transplant or stroke, or been advised to have any diagnostic test or surgery not yet performed? ................................................................  ☐  ☒
If "Yes," name(s) of proposed insured(s) _____
b. Is any proposed insured age 71 or older?.........................................................................................  ☐  ☒
If "Yes," name(s) of proposed insured(s) _____
If "Yes" to 21. a., or 21. b., no premium may be collected with this application.

Primary Proposed Insured _Jonathan Meeks_

|  | YES | NO |
|--|--|--|

Questions 22 through 37 are only for persons proposed for insurance who are **NOT** expected to be subject to a Medical Examination. All applicants may, nevertheless, be subject to a Medical Examination at the Company's option.
Please complete questions 22-37 for each person who did not check "Yes" above, and for each child who is not an additional proposed insured:

22. a. Primary Proposed Insured: Height _____   Weight _____   b. Additional Proposed Insured: Height _____   Weight _____

   c. Has any proposed insured had a change in weight of 10 or more pounds in the past year?...................................................... ☐ ☐
   If "Yes," Name _____   Details _____
   If "Yes," Name _____   Details _____

23. Is any proposed insured currently taking any medication or under medical observation, treatment, or therapy?............................ ☐ ☐
   If "Yes," Name _____
   Give details including reasons for medication, treatment or therapy and name, address and telephone number of physician.
   _____
   _____
   If "Yes," Name _____
   Give details including reasons for medication, treatment or therapy and name, address and telephone number of physician.
   _____
   _____

24. Within the past 5 years, has any proposed insured consulted a doctor or been a patient in a hospital, clinic or treatment facility, or gone to a hospital emergency room or walk-in or similar clinic for medical care or consultation?................................................. ☐ ☐
   If "Yes," Name _____
   Date(s) _____ Duration _____ Type of Visit/Stay_____
                                                              (hospital, clinic, treatment facility, ER, walk-in or clinic)
   Name, Address, and Telephone Number of the doctor, hospital, clinic, ER or treatment facility _____
   _____
   Give details _____
   Name _____
   Date(s) _____ Duration _____ Type of Visit/Stay_____
                                                              (hospital, clinic, treatment facility, ER, walk-in or clinic)
   Name, Address, and Telephone Number of the doctor, hospital, clinic, ER or treatment facility _____
   _____
   Give details _____

25. In the immediate family of any proposed insured, has anyone been diagnosed or treated by a member of the medical profession for high blood pressure, heart disease prior to age 60, kidney disease, stroke, diabetes prior to age 55, sickle cell anemia, cerebrovascular disorder, aneurysm, or cancer?........................................................................................................................ ☐ ☐
   If "Yes," Name of Proposed Insured: _____
   Relationship to Proposed Insured_____ Type/Details _____
   Name of Proposed Insured: _____
   Relationship to Proposed Insured_____ Type/Details _____

DESK CODE - HQ                                          Jonnathan Meeks - 211543070

Primary Proposed Insured _Joenathan Meeks_

|  | YES | NO |
|---|---|---|

**28.** Has any proposed insured ever been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for high blood pressure? .................................................................................................................... ☐ ☐

If "Yes," Name _____   If "Yes," Name _____
Date of diagnosis _____   Date of diagnosis _____
Treatment _____   Treatment _____
Last blood pressure reading and date _160 - 3-1_   Last blood pressure reading and date _____
Highest blood pressure reading in past 12 months _____   Highest blood pressure reading in past 12 months _____
Average blood pressure reading_____   Average blood pressure reading_____
Name and address of physician treating high blood pressure.   Name and address of physician treating high blood pressure.

_____   _____
_____   _____
_____   _____

**27.** Has any proposed insured ever been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for diabetes? ......................................................................................................................... ☐ ·☐

If "Yes," Name _____   If "Yes," Name _____
Date of diagnosis _____   Date of diagnosis _____
Describe treatment _____   Describe treatment _____
List any disability related to diabetes _____   List any disability related to diabetes _____
Last blood sugar or HA1C reading and date _____   Last blood sugar or HA1C reading and date _____
Has the proposed insured experienced diabetic coma, or vascular, kidney, heart, eye or other problems related to diabetes?  ☐ Yes  ☐ No   Has the proposed insured experienced diabetic coma, or vascular, kidney, heart, eye or other problems related to diabetes?  ☐ Yes  ☐ No
If "Yes," provide details _____   If "Yes," provide details _____

Name and address of physician treating diabetes   Name and address of physician treating diabetes

_____   _____
_____   _____
_____   _____

**28.** Within the past 5 years, has any proposed insured consumed alcoholic beverages? ......................................................... ☐ ☐
If "Yes," Name _____   Average No. of drinks per week _____
Maximum No. of drinks per day _____   Type (Beer, Wine, Liquor) and Date of last use _____
Name _____   Average No. of drinks per week _____
Maximum No. of drinks per day _____   Type (Beer, Wine, Liquor) and Date of last use _____

**29.** Has any proposed insured ever received medical treatment or counseling from a physician for, or been advised by a physician to discontinue or reduce, the use of alcohol or prescribed or non-prescribed drugs (cocaine, marijuana, heroin, methamphetamine) or other controlled substances, or has any proposed insured used such a non-prescribed drug or controlled substance, or any prescription medication other than as prescribed by a physician? ☐ ☐
If "Yes," Name _____ Date(s)_____ Duration_____ Type _____
Details (including name, address and telephone number of the doctor, hospital, clinic or treatment facility)_____

_____
Name _____ Date(s)_____ Duration_____ Type _____
Details (including name, address and telephone number of the doctor, hospital, clinic or treatment facility)_____

Primary Proposed Insured _Joenathan Meeks_

|  | YES | NO |
|---|---|---|

30. Within the past 10 years, has any proposed insured been diagnosed as having or been treated for Acquired Immune Deficiency Syndrome (AIDS), or tested positive for the Human Immunodeficiency Virus (HIV)? .................................................. ☐ ☐
If "Yes," Name _____ Details _____
Name and Address of Physician_____
If "Yes," Name _____ Details _____
Name and Address of Physician_____

31. Within the past 12 months, has any proposed insured had one or more sores that have not healed, had changes in the appearance of a mole, experienced bleeding, chest pain, convulsions, dizziness, fatigue, hoarseness, numbness, or paralysis for which the cause is not known and for which a doctor has not been consulted? .................................................. ☐ ☐
If "Yes," Name _____ Date(s)_____ Duration_____ Type _____
Details_____
Name _____ Date(s)_____ Duration_____ Type _____
Details_____

32. In the past 24 months, has any proposed insured been advised by a member of the medical profession concerning any abnormal diagnostic test results, or been advised to have any diagnostic tests (including self-administered), treatment or surgery which was not completed or does any proposed insured have test results pending except those tests related to the Human Immunodeficiency Virus (AIDS virus)? .................................................. ☐ ☐
If "Yes," Name _____ Date(s)_____ Type_____
Details_____
(including name, address and telephone number of the doctor, hospital, clinic or treatment facility)
Name _____ Date(s)_____ Type_____
Details_____
(including name, address and telephone number of the doctor, hospital, clinic or treatment facility)

33. Does any proposed insured have a pending appointment with any physician or other medical professional or have the intent to make such appointment within the next 60 days? .................................................. ☐ ☐
If "Yes," Name _____ Date(s)_____ Type_____
Details_____
(including name, address and telephone number of the doctor, hospital, clinic or treatment facility)
Name _____ Date(s)_____ Type_____
Details_____
(including name, address and telephone number of the doctor, hospital, clinic or treatment facility)

34. Is any proposed insured currently a patient in or been advised to enter a hospital, nursing home, hospice or assisted living facility? ..... ☐ ☐
If "Yes," Name _____ Details _____
Name _____ Details _____

35. Has any proposed insured made claim for or received disability (other than for routine pregnancy) or Worker's Compensation benefits in the past 5 years? .................................................. ☐ ☐
If "Yes," Name _____ Type of Disability _____ Details_____
Name _____ Type of Disability _____ Details_____

36. Within the past 24 months, has any proposed insured:
   (a) been diagnosed, treated, tested positive for or been given medical advice by a member of the medical profession for fainting, stumbling or falling while walking, problems with balance, deterioration in vision or hearing or shortness of breath? .......... ☐ ☐
   (b) received home health care services, physical therapy or rehabilitation therapy? .................................................. ☐ ☐
   (c) resided in senior citizen's housing or a retirement or assisted living community? .................................................. ☐ ☐
   (d) required assistance or supervision with or had any limitations in performing, any of the following daily activities: bathing, bladder and/or bowel control, eating, dressing, toileting or transferring (moving into or out of a bed, chair or wheelchair)? .......... ☐ ☐
   (e) required assistance with routine activities such as: using the phone, taking medications, paying bills, shopping, driving a car, traveling outside the home or preparing meals? .................................................. ☐ ☐

Primary Proposed Insured: _Jonathan Meeks_

|  | YES | NO |
|---|---|---|
| 37. Has any proposed insured ever been diagnosed as having, or been treated for or consulted a licensed health care provider for any of the following. (If "Yes," check applicable boxes below.) | | |
| (a) heart disease, heart attack, chest pain, shortness of breath, irregular heartbeat, heart murmur, high cholesterol or other disorder of the heart? | ☐ | ☐ |
| (b) a blood clot, aneurysm, stroke, transient ischemic attack, or other disease or disorder of the arteries or veins? | ☐ | ☐ |
| (c) cancer, malignant tumor or growth, leukemia, melanoma, Hodgkin's disease, non-Hodgkin's lymphoma, masses, cysts, polyps or other similar abnormalities? | ☐ | ☐ |
| (d) a disease or disorder of the thyroid or other glands or a disease or disorder of the immune or lymphatic system? | ☐ | ☐ |
| (e) a disease or disorder of the digestive system, throat, esophagus, stomach, intestine, liver, pancreas, or gall bladder? | ☐ | ☐ |
| (f) a disease or disorder of the urinary tract, kidneys, bladder, or prostate, or polycystic kidneys, or protein in the urine? | ☐ | ☐ |
| (g) a disease or disorder of the respiratory system, or asthma, chronic bronchitis, chronic obstructive pulmonary disease (COPD), emphysema, sleep apnea, or other lung disorder? | ☐ | ☐ |
| (h) a disease or disorder of the nervous system, brain, or spinal cord, or cerebral palsy, multiple sclerosis, paralysis or seizures? | ☐ | ☐ |
| (i) anxiety, depression or other mental disorder? | ☐ | ☐ |
| (j) Alzheimer's disease or dementia? | ☐ | ☐ |
| (k) glaucoma, macular degeneration, optic neuritis? | ☐ | ☐ |
| (l) a disease or disorder of the blood, or anemia, hemophilia, sickle cell anemia? | ☐ | ☐ |
| (m) a disease or disorder of the muscles or bones, including but not limited to the back or joints? | ☐ | ☐ |
| (n) a disease or disorder of the reproductive system? | ☐ | ☐ |

Explain "Yes" answers to Questions 36-37.

| Name | Date | Duration | Details | Name(s) and Address(es) of Doctor(s) or Hospital(s) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

The space below may also be used to elaborate on any other question on this application.

## OWNER'S CERTIFICATION

Under penalties of perjury, I certify that the following number, ██████████ , is my correct taxpayer identification number, AND

Under penalties of perjury, I certify that I am not subject to backup withholding because:
(a) I am exempt from backup withholding, or
(b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of failure to report all interest or dividends, or
(c) the IRS has notified me that I am no longer subject to backup withholding, AND

Under penalties of perjury, I certify that I am a U.S. person (including a U.S. resident alien).

You must cross out item (b) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends in your tax return.

X _Jacintha Meek_ _____     8/18/11
                          Signature of Owner                                      Date

---

### Consent to Insurance on Life of Minor Primary Proposed Insured

I hereby consent to the insurance plan, amount and beneficiary designation shown on the application and also reaffirm the answers to the health questions as they pertain to the Minor Primary Proposed Insured.

X _____     _____
        Signature of Biological/Adoptive Father or Mother or of Legal Guardian            Date

X _____     _____
        Signature of Biological/Adoptive Father or Mother or of Legal Guardian            Date

---

### Consent to Children's Term Rider on Life of Minor Stepchild of Primary Proposed Insured or Additional Proposed Insured

I hereby consent to the insurance plan and amount shown on this application as to any biological and adopted child(ren) of mine listed in this application. I understand that the beneficiary of such applied-for coverage on such child(ren) will be the Owner of the policy. I affirm the answers to the health questions on this application as to such child(ren).

X _____     _____
                Signature of Biological/Adoptive Father or Mother                          Date

---

### SECONDARY ADDRESSEE FOR CHRONIC ILLNESS ACCELERATED BENEFIT RIDER II (not applicable to any other coverage).

Name and address of person to receive notice of lapse or termination of the applied-for coverage (in addition to the payer of the Policy):

Name_____     Address_____

Protection Against Unintended Lapse: I understand that I have the right to designate at least one person other than myself to receive notice of lapse or termination of this accelerated death benefit rider for nonpayment of cost of insurance. I understand that notice will not be given until thirty (30) days after cost of insurance is due and unpaid. By not providing a name and address, I signify that I elect NOT to designate any person to receive such notice.

---

### AGENT'S CERTIFICATION

I certify that I have asked each question and that the answers have been truly and accurately recorded as given. I have recorded any unfavorable information which I have knowledge of concerning any proposed insured. I confirm that any and all signatures of the Primary Proposed Insured, Additional Proposed Insured, Owner and Witness(es) in this application were signed in my presence.

8/18/11
  Date                                        Signature of Licensed Agent

DESK CODE - IJQ                                                     Jonathan Meeks • 211343070

## ACKNOWLEDGEMENT – AGREEMENT – AUTHORIZATION – NOTICE

I, the Primary Proposed Insured (and any Owner or Additional Proposed Insured signing below), by my signature set forth hereafter:

**Acknowledge** that, if a Conditional Receipt was issued to me as a result of this application, I have read, or have been given the opportunity to read or to have read to me, all terms and provisions of such Conditional Receipt.

**Agree** that, under the Conditional Receipt, if any, given to me as the result of this application and under any additional pending application for other life, accident and/or health insurance coverage from American General Life and Accident Insurance Company ("the Company"), the aggregate liability on account of all coverages applied for with the Company will be the amount of coverage applied for or $250,000, whichever is less.

**Agree** that any temporary insurance arising under the terms of any Conditional Receipt given to me as a result of this application shall become effective only if and when such Conditional Receipt is delivered to the Owner.

**Agree** that all statements and answers in this application are complete and true to the best of my knowledge and belief and are the basis for any policy issued by the Company and agree that no information shall be deemed to have been given to the Company unless it is set forth in this application or in any supplemental application.

**Agree** that, except as stated in any Conditional Receipt, if such Conditional Receipt was given to me as a result of this application, the insurance will take effect on the Policy Date shown in the Policy if (a) the Policy has been delivered to me; (b) the first full modal premium for the Issued Policy has been paid while each proposed insured is alive; and (c) there has been no change in the health of any proposed insured that would change the answer to any question in this or any supplemental application before the conditions in items (a) and (b) above are met.

**Agree** that no agent of the Company or Medical Examiner has authority to waive any answer or otherwise modify this or any supplemental application or to bind the Company in any way by making any promise or representation which is not set out in writing in this application.

**Authorize:** (a) the Company to obtain an investigative consumer report on me; (b) any consumer reporting agency, employer, the Medical Information Bureau ("MIB"), and any governmental or other entity possessing non-health-related information concerning me to disclose such information to the Company, its reinsurers, and its legal representative. Any data obtained will be used by the Company to determine eligibility for insurance and will not be released by the Company to any person or organization, except to the Company's reinsurers, the MIB, other companies to whom I have applied or may apply for insurance coverage, other persons or organizations who perform business or legal services in connection with my application, and any entity to which release of such data is required by law. I know that I or my authorized representative may request to receive a copy of this Authorization. I agree that a facsimile of this Authorization shall be as valid as the original and that this Authorization shall be valid for the purpose of collecting information in connection with a claim for: (1) two and one-half years from the date shown below for the purpose of collecting information in connection with an application for insurance, (2) the term of coverage of the applied-for insurance policy, and (3) the duration of a claim for benefits.

**ACKNOWLEDGE** receipt of the following notices: (a) "Notice of Information Practices" required by Public Law 91-508 and other information practices statutes; (b) MIB Pre-Notice; and (c) Investigative Consumer Report.

**NOTICE:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**NOTICE:** If a proposed insured's answers on this application are incorrect or untrue, the Company may have the right to deny benefits and/or rescind coverage.

**PRIMARY PROPOSED INSURED** - If an investigative consumer report is prepared in connection with this application:
☐ I elect to be interviewed.        ☒ I elect NOT to be interviewed.

**ADDITIONAL PROPOSED INSURED** - If an investigative consumer report is prepared in connection with this application:
☐ I elect to be interviewed.        ☐ I elect NOT to be interviewed.

**AGENT** - To the best of your knowledge, is the insurance applied for intended to replace any existing insurance?  ☐ Yes (Explain)  ☒ No

Signed at  _Mph, TN_    _8/18/11_   (X) _Jonathan Meeks_
             City, State        Date              SIGNATURE OF PRIMARY PROPOSED INSURED

X _____                    X _____
   SIGNATURE OF ADDITIONAL PROPOSED INSURED            SIGNATURE OF OWNER
           (IF APPLICABLE)                        (IF OTHER THAN PRIMARY PROPOSED INSURED)

X _____                    X _Jonathan John_____
   SIGNATURE OF WITNESS (IF APPLICABLE)               SIGNATURE OF LICENSED AGENT

DESK CODE - ???                                                            Jonathan Meeks - 211943070

**APPLICATION TO AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY**     PART 1M
(To be Completed By the Medical Examiner)

Name of Proposed Insured  _Jonathan   Meeks_     Birth Date ▮▮▮▮ ┊ ▮▮▮ ┊ ▮▮▮▮   Age ▮▮▮
                                                          Month      Day

1. Name, address and telephone number of the proposed insured's primary physician. (If no primary physician, provide the name, address and telephone number of physician last seen.)
   _Kentrof  8248 S. Lauderdale  Memphis, TN  901·948·5558_
   Date, reason, findings and treatment at last visit _~8/11  Ck-up. + refill meds  Annually_

2. Is the proposed insured currently taking any medication or under medical observation, treatment, or therapy? .............. Yes ☒  No ☐
   If "Yes," give details including reasons for medication, treatment or therapy and name, address and telephone number of physician.
   _Lisin/HCTZ 20/25/d, Verapamil 240mg/d_

3. Has the proposed insured had a change in weight of 10 or more pounds in the past year? ....................... ☐  ☒

4. Within the past 5 years, has the proposed insured consulted a doctor or been a patient in a hospital, clinic or treatment facility or gone to a hospital emergency room, walk in clinic, or similar clinic for medical care or consultation? _See 2_ ...... ☒  ☐

5.
| Family History: | Age If Living | Age at Death | Cause of Death | Details of Any Heart Disease Diagnosis | Details of Any Cancer Diagnosis | LAB USE ONLY |
|---|---|---|---|---|---|---|
| Father | | 65 | Sudden MI | | | |
| Mother | 70 | | | | | |
| Brothers 1 | 50 | | | | APPLICANT NAME | |
| Sisters 3 | 35,45,60 | | | | 80  33106646  11 | |

6. Has the proposed insured ever been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for high blood pressure? .................... ☒  ☐
   If "Yes," Date of diagnosis _~30yrs ago_  Describe Treatment _Lisin/HCTZ 20/25/d, Verapamil 240mg/d_
   Last blood pressure reading and date _Don't c_   Highest blood pressure reading in past 12 months _Don't c_
   Average blood pressure reading
   Name and address of physician treating high blood pressure.
   _Dr. Kentrof_

7. Has the proposed insured ever been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for diabetes? ............. ☐  ☒
   If "Yes," Date of diagnosis ____   Describe treatment ____
   List any disability related to diabetes ____   Last blood sugar or HA1C reading and date ____
   Has the proposed insured experienced diabetic coma or vascular, kidney, heart, eye or other problems related to diabetes? ............. ☐  ☒
   Name and address of physician treating diabetes.

8. Has the proposed insured ever been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for a nervous disorder including anxiety or depression? ........................... ☐  ☒
   If "Yes," Diagnosis ____   Date of diagnosis ____
   Describe treatment ____
   What factors lead to the diagnosis? ____   List any disability related to the diagnosis ____
   Has the proposed insured been hospitalized related to the diagnosis? ........................... ☐  ☒
   If "Yes," provide date and details ____
   How many attacks or occurrences in the past 12 months? ____   How often do symptoms occur? ____
   Name and address of physician treating nervous disorder.

9. Has the proposed insured ever been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for sleep apnea, asthma, chronic bronchitis or chronic obstructive pulmonary disease (COPD)? ........................... ☐  ☒
   If "Yes," Diagnosis ____   Date of diagnosis ____
   Describe treatment ____   Date of last treatment ____
   Describe symptoms (when & how often do they occur?) ____
   List any disability related to the diagnosis ____
   Name and address of physician treating diagnosis.

10. Within the past 5 years, has the proposed insured used tobacco (cigarettes, cigars, pipe, snuff, chewing tobacco) or nicotine patches, nicotine gum or any other form of nicotine? ........................... ☐  ☒
    If "Yes," Type ____   Date of Last Use ____   Frequency/Amount ____

11. Within the past 5 years, has the proposed insured used alcoholic beverages? ........................... ☐  ☒
    If "Yes," Average No. of drinks per week ____   Maximum No. of drinks per day ____
    Type (Beer, Wine, Liquor) ____   Date of last use ____

ICC13AGLA2001A (0813)

PART 1B

12. Has the proposed insured ever received medical treatment or counseling from a physician for, or been advised by a physician to discontinue or reduce, the use of alcohol or prescribed or non-prescribed drugs (cocaine, marijuana, heroin, methamphetamine) or other controlled substances, or has the proposed insured used such a non-prescribed drug or controlled substance, or any prescription medication other than as prescribed by a physician? .................................................................................................... ☐ ☒  Yes No

If "Yes," Type of drug(s)/alcohol product(s) _____  Date last used _____

Name(s) of doctor/facility _____  Phone ( ) _____

Address _____  City _____  Zip _____

Treatment Dates _____  Support Groups _____  Last Date attended _____

Details of any drug or alcohol related arrests _____

13. Within the past 10 years, has the proposed insured been diagnosed as having or been treated for Acquired Immune Deficiency Syndrome (AIDS), or tested positive for the Human Immunodeficiency Virus (HIV)? .................................................................................... ☐ ☒

14. Within the past 12 months, has the proposed insured had one or more sores that have not healed, had changes in the appearance of a mole, experienced bleeding, chest pain, convulsions, dizziness, fatigue, hoarseness, numbness or paralysis for which the cause is not known and for which a doctor has not been consulted? .................................................................................................... ☐ ☒

15. In the past 24 months, has the proposed insured been advised by a member of the medical profession concerning any abnormal diagnostic test results, or been advised to have any diagnostic tests (including self-administered), treatment or surgery which was not completed or does the proposed insured have test results pending? (except those tests related to the Human Immunodeficiency Virus (AIDS virus))...................................................................................................................... ☐ ☒

16. Does the proposed insured have a pending appointment with any physician or other medical professional or have the intent to make such appointment within the next 60 days? ....................................................................................................... ☐ ☒

17. Has the proposed insured been advised to enter a hospital, nursing home, hospice or assisted living facility? ................................. ☐ ☒

18. Has the proposed insured made claim for or received disability (other than for routine pregnancy) or Worker's Compensation benefits in the past 5 years? ....................................................................................................................................... ☐ ☒

If "Yes," Type of Disability _____  Details _____

19. Within the past 24 months, has the proposed insured:
   (a) been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for fainting, stumbling or falling while walking, problems with balance, deterioration in vision or hearing or shortness of breath?............. ☐ ☒
   (b) received home health care services, physical therapy or rehabilitation therapy? ............................................................. ☐ ☒
   (c) resided in senior citizen's housing or a retirement or assisted living community? .......................................................... ☐ ☒
   (d) required assistance or supervision with or had any limitations in performing, any of the following daily activities: bathing, bladder and/or bowel control, eating, dressing, toileting or transferring (moving into or out of a bed, chair or wheelchair)?............ ☐ ☒
   (e) required assistance with routine activities such as: using the phone, taking medications, paying bills, shopping, driving a car, traveling outside the home or preparing meals?................................................................................................ ☐ ☒

20. Has the proposed insured ever been diagnosed as having or been treated for or consulted a licensed health care provider for any of the following? (If "Yes," check applicable boxes below.) ...................................................................................................... ☐ ☐
   (a) heart disease, heart attack, chest pain, shortness of breath, irregular heartbeat, heart murmur, high cholesterol or other disorder of the heart? ...................................................................................................................................................... ☐ ☒
   (b) a blood clot, aneurysm, stroke, transient ischemic attack, or other disease or disorder of the arteries or veins? ...................... ☐ ☒
   (c) cancer, malignant tumor or growth, leukemia, melanoma, Hodgkin's disease, non-Hodgkin's lymphoma, masses, cysts, polyps or other similar abnormalities? ......................................................................................................................................... ☐ ☒
   (d) a disease or disorder of the thyroid or other glands or a disease or disorder of the immune or lymphatic system? .................. ☐ ☒
   (e) a disease or disorder of the digestive system, throat, esophagus, stomach, intestine, liver, pancreas, or gall bladder? ........... ☐ ☒
   (f) a disease or disorder of the urinary tract, kidneys, bladder, or prostate, or polycystic kidneys, or protein in the urine? ............ ☐ ☒
   (g) a disease or disorder of the respiratory system, or emphysema, or other lung disorder? ................................................ ☐ ☒
   (h) a disease or disorder of the nervous system, brain, or spinal cord, or cerebral palsy, multiple sclerosis, paralysis or seizures?.... ☐ ☒
   (i) Alzheimer's disease or dementia? ........................................................................................................................ ☐ ☒
   (j) glaucoma, macular degeneration, optic neuritis? ................................................................................................... ☐ ☒
   (k) a disease or disorder of the blood, or anemia, hemophilia, sickle cell anemia? ............................................................ ☐ ☒
   (l) a disease or disorder of the muscles or bones, including but not limited to the back or joints? ........................................... ☐ ☒
   (m) a disease or disorder of the reproductive system? ................................................................................................ ☐ ☒

If answered "Yes" to question 12-20, provide appropriate details such as: diagnosis; date of diagnosis; name, address and telephone number of physician; tests performed; test results; medications or recommended treatment.

_____

_____

I agree that all statements and answers in this application are complete and true to the best of my knowledge and belief. I agree that this application will become a part of the policy applied for and any policy will be issued on the basis of my answers and statements. I agree that no agent of the Company or the Medical Examiner has authority to waive any answer or otherwise modify this application or bind the Company in any way by making any promise or representation which is not set out in writing in this application.

Dated at _Memphis, TN_

this _10_ day of _Sept_, _11_                   _[signature] Jacnethen Meek_
                                                          Signature of Proposed Insured

Witnessed by _[signature] J Stanley RN_          Signature of Parent or Guardian required if Proposed Insured
                    Medical Examiner                 has not reached his statutory age

EXAMONE / 777
7725 KIRBY RD. #15
MEMPHIS, TN 38119

ICC10.AGLA2001-X (0510)

**American General Life and Accident Insurance Company**

American General Center • Nashville, Tennessee 37250-0001

**STATE OF TENNESSEE**
Office of Vital Records

TENNESSEE DEPARTMENT OF HEALTH
**CERTIFICATE OF DEATH**

STATE FILE NUMBER 026087

1. DECEDENT'S LEGAL NAME: Jonathan Meeks
2. SEX: Male
3. DATE OF DEATH: November 4, 2012
4. TIME OF DEATH: 4:40 PM
5. AGE: 31
6. DATE OF BIRTH: ▓▓▓
7. BIRTHPLACE: Carrollton, Mississippi

PLACE OF DEATH: ☒ Inpatient

AC CITY OR TOWN: Memphis
COUNTY OF DEATH: Shelby

FACILITY NAME: 4252 Park Forest Drive

MARITAL STATUS: ☒ Never married

SURVIVING SPOUSE'S NAME:

DECEDENT'S USUAL OCCUPATION: Concrete Finisher
KIND OF BUSINESS/INDUSTRY: Construction

RESIDENCE: 4252 Park Forest Drive
STATE: Tennessee
COUNTY: Shelby
CITY OR TOWN: Memphis
ZIP CODE: 38141

DECEDENT'S EDUCATION:

DECEDENT OF HISPANIC ORIGIN:

DECEDENT'S RACE: Black or African American

FATHER'S NAME: Cliff Meeks Jr.

MOTHER'S NAME PRIOR TO FIRST MARRIAGE: Dorothy Humes

INFORMANT'S NAME: Dorothy Humes Meeks
RELATIONSHIP TO DECEDENT: Mother
MAILING ADDRESS: 59 East McKellar Avenue, Memphis, TN 38109

METHOD OF DISPOSITION: ☒ Burial
PLACE OF DISPOSITION: New Park Cemetery, Memphis, Tennessee

SIGNATURE OF EMBALMER: Wendell J. Naylor   LICENSE NUMBER: 4784

NAME AND ADDRESS OF FUNERAL HOME: M.J. Edwards Whitehaven Funeral Chapel 5494 Elvis Presley Blvd Memphis, TN 38116

REGISTRAR'S SIGNATURE
DATE FILED: 11/26/2012

CERTIFIER: ☒ PHYSICIAN

SIGNATURE OF CERTIFIER
LICENSE NUMBER: 12945
DATE SIGNED: 11/15/12
NAME AND ADDRESS: Sudha Prasad, M.D. 3836 Park Avenue, Memphis, Tennessee 38111

PART I.
IMMEDIATE CAUSE: Sudden cardiac death
Due to: Diastolic Congestive Heart Failure
Due to: Hypertensive Heart Disease

PART II. Other significant conditions contributing to death: Left Ventricular hypertrophy Medical Non compliance

WAS AN AUTOPSY PERFORMED? ☒ No
WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☒ No

MANNER OF DEATH: ☒ Natural

I hereby certify the above to be a true and correct copy of the original document on file in this department. This certified copy is valid only when printed on security paper showing the red embossed seal of the Department of Health. Alteration or erasure voids this certification. Tennessee Code Annotated 68-3-101 et seq., Vital Records Act of 1977.

5621471

Teresa S. Hendricks
STATE REGISTRAR

Dorrie Conner
Local Registrar
Shelby County

Date Issued: DEC 14 2012

CERTIFICATION OF VITAL RECORD

EXHIBIT B

**American General Life and Accident Insurance Company**
A member company of American International Group, Inc.
P O Box 305800
Nashville TN 37230-5800



**AIG** AMERICAN GENERAL

American General Life and
Accident Insurance Company

## Life Claims Claimant's Statement

Policy Numbers ___10-02454,3870___ , _____ , _____

**Information about the Deceased:**                    Claim Number _____

1. Name __Johnathan_____ __Meeks__    Date of Death _11_ _4_ _12_
   First          Middle Initial    Last                          Mo.  Day  Year

2. Other Names by which the Deceased may have been known: _____

3. Last Address __4252 Park Forest Dr_____
   Street Number          Street Name              Apt, Box # (if any)
   __Memphis_____ _____  _____
   City                          State              Zip

4. Marital Status ☐ Married  ☐ Single  ☐ Widow/Widower  ☐ Separated  ☐ Divorced

5. Date of Birth __▓▓▓▓▓▓__ Place of Birth __Mis____
   Mo.    Day    Year

6. Is policy less than two years old? ☑ Yes  ☐ No

7. Is a claim being made for Accidental Death Benefits?  ☐ Yes  ☐ No

### If Policy Is Less Than Two Years Old please complete this section:

When did symptoms of last illness begin? __On May. of 2012____

When was a doctor first consulted? __May 2012____

Doctor's Name: __DR Suha____

Address __Park Av_____ Phone # _____

Was there a hospital confinement?  ☑ Yes  ☐ No

Name and address of hospital: __Baptst East Memphis TN__ Phone # _____

List names of doctors/hospital where treatment was received within the past five years:

Name: _____ Address: _____ Phone # _____

Dates of treatment: _____ Nature of Treatment: _____

Name: _____ Address: _____ Phone # _____

Dates of treatment: _____ Nature of Treatment: _____

### If You Are Claiming Any Accidental Death Benefits please complete this section:
(Include copies of available newspaper clippings and/or police report giving circumstances)

**Type of Accident:** _____

Date: _____ Location: _____

Details: _____

**Vehicle Accident:**

Type of vehicle: _____ Name of driver _____

**Homicide:**

Motive? _____ Arrest made? ☐ Yes ☐ No

Suspects? (Give names) _____ Trial pending? ☐ Yes ☐ No

Witnesses? (Give names, addresses, phone numbers) _____

**Suicide:**

Investigation complete? ☐ Yes ☐ No  Was a note left? ☐ Yes ☐ No  (If yes, submit copy)

Witnesses? (Gives names, addresses and phone numbers) _____

**EXHIBIT**
C

AGLA180A REV09C6                                                    Page 1

## Information about You:

1. Your Name (please print or type) _Vickie  A  King_   Your date of birth ███████
   First          Middle Initial        Last

2. Your Phone Number (in case we need to contact you):  Day _901-314-8299_   Evening _____

3. Your Mailing Address _~~1516~~  1516  Beaver Trail_
   Street Number        Street Name                    Apt. Box (if any)
   _Cordova_        _TN_        _38016_
   City          State        Zip

4. Your relationship to the insured. You are the:  ☐ Spouse  ☐ Child  ☑ Other _Fiance_
                                                                    Please Explain

5. Have you given a funeral home an assignment to collect any amount due under this claim?  ☐ Yes  ☑ No
   Name of funeral home _____
   Phone # _____   Amount assigned: $ _____

### ------- Payment of Policy Proceeds -------

**If your insurance benefit is $10,000 or more, you may elect to have the proceeds paid through a free, interest-bearing in your name.**

- This account, called the Convenience Benefit Account® is a safe, secure place to keep your proceeds while you deci best use them.

- A personal checkbook will be mailed to you once your claim has been approved. You may access all or part of the mo by writing a check for $250.00 or more. Any amount that remains in the account will continue to earn interest.

- Both your principal and any interest you earn are guaranteed by American General Life and Accident Insurance Compa The establishment of a Convenience Benefit Account satisfies AGLA's contractual obligation for the payment of certain proceeds. The Convenience Benefit Account is not insured by the Federal Deposit Insurance Corporation or any feder

- Account balances are the liability of AGLA, and AGLA reserves the right to reduce account balances for any paymen error.

- If an initial life insurance benefit is less than $10,000, AGLA will send you a check for the total benefit amount.

  ☐ Please pay the insurance proceeds through the Convenience Benefit Account.

**If you do not choose to take advantage of the Convenience Benefit Account, select one of the following choices:**

  ☑ Please pay the insurance proceeds by check.

  ☐ Please pay the insurance proceeds by means of a Settlement option permitted by the Policy (please refer to settleme in the policy and indicate your preference):

**If you do not select one of the options above for payment, the proceeds will be paid into the Convenience Benefit A the amount is $10,000 or more. Otherwise, the proceeds will be paid by check.**

Note: The signature on this Claimant's Statement will be used as your signature card for the Convenience Benefit Accoun

### Your Social Security Number/Tax Identification Number: _____

Under penalties of perjury, I certify that: **1.** The number shown on this form is my correct taxpayer identification number (or I a for the number to be issued to me); and **2.** I am not subject to backup withholding because: **(a)** I am exempt from backup wi or **(b)** I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failu all interest or dividends, or **(c)** the IRS has notified me that I am no longer subject to backup withholding, and **3.** I am an U. (including an U.S. resident alien).

**Certification Instructions:** You must cross out item 2 above if you have been notified by the IRS that you are currently s backup withholding because you have failed to report all interest and dividends on your tax return. The IRS does not req consent to any provisions of this document other than the certification required to avoid backup withholding.

  ☐ I elect NOT to have Federal Income Tax withheld from the TAXABLE PORTION of my distribution.

  ☐ I elect to have Federal Income Tax withheld from the TAXABLE PORTION of my distribution.

Your Signature: I agree to cooperate with the Company in its investigation of this claim by providing assistance including, but to, completing, signing and submitting any questionnaire or authorization form needed by the Company, in its sole opinion, its investigation.

The Internal Revenue Service does not require your consent to any provision of this document other than the cert required to avoid backup withholding.

Ⓧ _Vickie a King_                                 _11-15-1._
   Beneficiary's Signature – PLEASE SIGN AS YOU WOULD SIGN A CHECK          Date

**American General Life and Accident
Insurance Company**
*A member company of American International, Group, Inc.*



American General Life and
Accident Insurance Company

## HIPAA Authorization - Life Claims
**Authorization to Obtain and Disclose Information**

_Johnathan Meeks_

Name of Insured (Please Print)                                    Date of Birth

I hereby authorize all of the people and organizations listed below to give American General Life and Accident Insurance Company and the American General Life Companies LLC, (an affiliated service company), (collectively the "Companies"), and their authorized representatives, including agents and insurance support organizations, (collectively, the "Recipient"), the following information:

- any and all information relating to my health (except psychotherapy notes) and my insurance policies and claims, including, but not limited to, information relating to any medical consultations, treatments, or surgeries; hospital confinements for physical and mental conditions; use of drugs or alcohol; and communicable diseases including HIV or AIDS.

I hereby authorize each of the following entities to provide the information outlined above:

- any physician or medical practitioner;
- any hospital, clinic or other health care facility;
- any insurance or reinsurance company (including, but not limited to, the Recipient or any other AIG American General company which may have provided me with life, accident, health, and/or disability insurance coverage, or to which I may have applied for insurance coverage, but coverage was not issued);
- any consumer reporting agency or insurance support organization;
- my employer, group policy holder, or benefit plan administrator;
- the Medical Information Bureau (MIB); and
-

I understand that the information obtained will be used by the Recipient to:

- determine my eligibility for benefits under and/or the contestability of an insurance policy; and
- detect health care fraud or abuse or for compliance activities, which may include disclosure to MIB and participation in MIB's fraud prevention or fraud detection programs.

I hereby acknowledge that the insurance company listed above is subject to federal privacy regulations. I understand that information released to the Recipient will be used and disclosed as described in the AIG American General Notice of Health Information Privacy Practices, but that upon disclosure to any person or organization that is not a health plan or health care provider, the information may no longer be protected by federal privacy regulations.

I may revoke this authorization at any time, except to the extent that action has been taken in reliance on this authorization or other law allows the Recipient to contest a claim under the policy or to contest the policy itself, by sending a written request to: American General Life and Accident Insurance Company, Attn: Life Claims Department - 380S, P.O. Box 305800, Nashville TN 37230-5800. I understand that my revocation of this authorization will not affect uses and disclosure of my health information by the Recipient for purposes of claims administration and other matters associated with my claim for benefits under insurance coverage and the administration of any such policy.

I understand that the signing of this authorization is voluntary; however, if I do not sign the authorization, the Companies may not be able to obtain the medical information necessary to consider my claim for benefits.

This authorization will be valid for 24 months or the duration of any claim for benefits under my insurance coverage, whichever is later. A copy of this authorization will be as valid as the original. I understand that I am entitled to receive, upon request, a copy of this authorization.

X _Vickie A. King_                              _11-15-12_
Signature of Insured or Insured's Personal Representative          Date

X _Vickie A King_                               _FuPwC_
Printed Name                                    Relationship

X _____                       _____
Witness Signature (if required)                 Date

X _____
Description of Authority of Personal Representative                Control Number/Policy Number

© 2006 American International Group, Inc. All rights reserved.

AGLA2118C REV0606                                                Page 3

**Please keep for your records**

## MIB PRE-NOTICE

Information regarding your insurability will be treated as confidential.  American General Life and Accident Insuranc Company, or its reinsurers may, however, make a brief report thereon to MIB, a not-for-profit membership organization c insurance companies, which operates an information exchange on behalf of its Members.  If you apply to another MI Member company for life or health insurance coverage, or a claim for benefits is submitted to such a company, MIB, upo request, will supply such company with the information in its file.

Upon receipt of a request from you MIB will arrange disclosure of any information it may have in your file.  Please contac MIB at 866-692-6901 (TTY 866-346-3642 for hearing impaired).  If you question the accuracy of information in MIB's fil you may contact MIB and seek a correction in accordance with the procedures set forth in the federal Fair Credit Reportin Act. The address of MIB's information office is Post Office Box 105, Essex Station, Boston, Massachusetts 02112.

American General Life and Accident Insurance Company, or its reinsurers, may also release information in its file to oth insurance companies to whom you may apply for life or health insurance, or to whom a claim for benefits may be submitte

AGLA MIB (1004)

---

## The Claim Process

In order to expedite the processing of your claim, it is important that you submit a fully completed and signed Claimant's Statemer and a certified copy of the insured's death certificate. The particular circumstances of your claim may require the submission c additional information. Such as:

- **Claims by Estate -** If the executor or administrator of an estate is filing a claim, he or she must complete and sign the Claiman Statement and submit a copy of the appointment papers.

- **Beneficiary is a Minor -** If a legal guardian of the child's estate has been appointed, he or she must sign the Claiman Statement and submit a copy of the guardianship papers.

- **Power of Attorney for the beneficiary -** You must attach a copy of the Power of Attorney authorization.

- **Assignment -** If benefits have been assigned to a funeral home or a financing company, we require an assignment for (provided by the assignee) be submitted. The assignment form must include the policy number(s), the dollar amount you wis to assign and the signature of the beneficiary.

If you need assistance completing this form, please contact us toll-free at 1-800-888-2452.

American General Life and
Accident Insurance Company
PO Box 305800
Nashville, TN 37230-5800



American General Life and Accident Insurance Company

February 25, 2013

VICKIE KING
1516 BEAVER TRAIL
CORDOVA, TN 38016

JOHNATHAN MEEKS
Claim: 0012093865

We acknowledge the claim on JOHNATHAN MEEKS.

On February 05, 2013 we requested medical records from
> BAPTIST MEMORIAL HOSPITAL EAST.

They have returned our request for medical records stating they would require the enclosed
special authorization form to be completed. The form will need to be completed by
> OLDEST SON OF THE INSURED.

We've enclosed a self-addressed envelope for your convenience.

Life Claims - Mail Code 380S
Phone Number (800)888-2452
Fax Number (615)749-2257

ALL
CC: TNS40048, TNS40060



EXHIBIT

D

**American General Life**
**Insurance Company**
Life Claims 380S
P. O. Box 305800
Nashville, TN 37230-5800
June 14, 2013

**AGLA.**

RICKY E WILKINS
ATTORNEY AT LAW
THE SHRINE BUILDING
66 MONROE AVE, SUITE 103
MEMPHIS TN  38103

Insured: JOENATHAN MEEKS
Claim Number: 0012093865
Policy Number: 10-0211543870

We acknowledge receipt of your letter dated June 10, 2013.

We received a claim from Vickie King for claim 0012093865. There is a contestable policy on this claim. Policy 10-0211543870 was issued September 16, 2011 from an application written on August 18, 2011. When there is a claim on a life insurance policy and a loss has occurred within two years of the date of issue, a routine investigation is made.

We have requested the medical records in consideration of this claim and are in the process of reviewing these records.

It appears we have all the necessary information from the beneficiary to review this claim, if we need any other documents in consideration of this claim, we will contact your office.

If you have any questions, please let us know.

*Brandy McCormick*
Brandy McCormick
Life Claims
Phone Number (800) 888-2452
Fax Number (615) 749-2257

bem

EXHIBIT
E

**American General Life
Insurance Company**
Life Claims 380S
P. O. Box 305800
Nashville, TN 37230-5800

**AGLA.**

July 18, 2013

RICKY E WILKINS
ATTORNEY AT LAW
THE SHRINE BUILDING
66 MONROE AVE, SUITE 103
MEMPHIS TN  38103-2471

Insured: JOHNATHAN MEEKS
Claim Number: 0012093865
Policy Number: 10-0211543870

We are sending this letter in reference to your correspondence dated June 24 and our
conversation on the telephone yesterday.

The claim for policy 10-0211543870 has been referred our management department for
review.

When they have completed their review, we will let you know.

If you have any questions, please let us know.

*Brandy McCormick*
Brandy McCormick

Life Claims
Phone Number (800) 888-2452
Fax Number (615) 749-2257

bem


EXHIBIT
F

**American General Life**
**Insurance Company**
PO Box 305800
Nashville, TN 37230-5800



August 08, 2013

RICKY E WILKINS
ATTORNEY AT LAW
THE SHRINE BUILDING
66 MONROE AVE, SUITE 103
MEMPHIS, TN 38103-2471



JOENATHAN MEEKS
Claim: 0012093865

We acknowledge the claim on JOENATHAN MEEKS.

We are obtaining medical records and will advise you further after they have been received
and reviewed.

Life Claims - Mail Code 380S
Phone Number (800)888-2452
Fax Number (615)749-2257

BEM
CC: TNS40048, TNS40060



EXHIBIT
G

**American General Life**
**Insurance Company**
PO Box 305800
Nashville, TN 37230-5800



August 09, 2013

RICKY E WILKINS
ATTORNEY AT LAW
THE SHRINE BUILDING
66 MONROE AVE, SUITE 103
MEMPHIS, TN 38103-2471



JOENATHAN MEEKS
Claim: 0012093865

We acknowledge the claim on JOENATHAN MEEKS.

We are reviewing our file and will advise you again soon.

Life Claims - Mail Code 380S
Phone Number (800)888-2452
Fax Number (615)749-2257

BEM
CC: TNS40048, TNS40060



EXHIBIT

H